UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION

---

| | |
|---|---|
| **PHILLIP TRUESDELL and LEGACY MEDICAL TRANSPORT, LLC,** | Civil Action No. _____ |
| Plaintiffs, | |
| v. | |
| **ADAM MEIER,** in his official capacity as Secretary of the Kentucky Cabinet for Health and Family Services; **KRISTI PUTNAM** and **TIMOTHY FEELEY,** in their official capacities as Deputy Secretaries of the Kentucky Cabinet for Health and Family Services; and **STEVEN DAVIS** in his official capacity as Inspector General of the Kentucky Cabinet for Health and Family Services, | |
| Defendants. | |

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Phillip Truesdell and Legacy Medical Transport, LLC, by and through their counsel, hereby allege:

### INTRODUCTION

1. This civil rights lawsuit challenges a state law that arbitrarily prevents entrepreneurs from providing medical transportation in Kentucky. Plaintiffs, a non-emergency ambulance company and its owner, challenge Kentucky's Certificate of Need regulations, KRS §§ 216B.061(1), 216B.085, 900 KAR 6:070 § 2(2), 6:090 § 3, as a violation of the Interstate Commerce Clause of the U.S. Constitution and the Due Process of Law, Equal Protection, and Privileges or Immunities Clauses of the Fourteenth Amendment.

2. Plaintiff Phillip Truesdell is the owner of Plaintiff Legacy Medical Transport, LLC (Legacy), a non-emergency ground ambulance business located in Ohio, just a mile from the Kentucky border. Legacy provides transportation services by ambulance for people who need non-emergency support—for example, because they require extra oxygen, are on dialysis, or must be transported by stretcher because they cannot sit up for extended periods of time.

3. Due to their proximity to the Ohio-Kentucky border, Plaintiffs regularly transport clients from Ohio to medical appointments and facilities in Kentucky. But under Kentucky law, they cannot transport those same clients back home to Ohio, or transport anyone between locations in Kentucky, without first obtaining a "Certificate of Need" from Defendants.[1] KRS §§ 216B.061; 216B.015(13).

4. To obtain a Certificate, Plaintiffs must submit to a procedure that allows established ground ambulance companies to effectively veto the issuance of new Certificates to their would-be competitors. Specifically, established companies may protest any Certificate application, which triggers an onerous, expensive, and time-consuming process akin to a trial where applicants must demonstrate a public "need" for their business. KRS § 216B.085; 900 KAR 6:070 §2(2). Protesting companies may also participate at the hearing and testify against the applicant. 900 KAR 6:090 § 3.

5. In practice, the Cabinet for Health and Family Services ("Cabinet") bases its determination of "need" on whether the applicant will harm the financial interests of the existing ground ambulance companies. In order to prove "need," an applicant must prove that there is

---

[1] Defendants, members of the Cabinet for Health and Family Services, are sued individually in their official capacity pursuant to 42 U.S.C. § 1983 and the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), but are referred to collectively as the "Cabinet."

enough public demand for ambulance services such that the applicant will not take away any customers from the current Certificate-holders.

6.  Together, the protest procedure and "need" requirement create a "Competitor's Veto," which unduly burdens interstate commerce and bears no rational relationship to any legitimate governmental interest. Instead, the "Competitor's Veto" serves to protect the established ambulance providers from competition.

7.  Plaintiffs are fit, willing, and able to operate in Kentucky. The only barrier to providing their services is the Certificate requirement. Plaintiffs seek to vindicate their rights to compete across state lines and to earn a living in the occupation of their choice, free of arbitrary and discriminatory barriers.

8.  Plaintiffs request a declaratory judgment that the challenged laws are invalid, unenforceable, and void; a permanent injunction against further enforcement of the challenged laws; and costs and reasonable attorney's fees. Plaintiffs do not seek money damages against any party.

## JURISIDICTION AND VENUE

9.  Plaintiffs bring this civil-rights lawsuit pursuant to 42 U.S.C. § 1983, for the violations of rights secured by Article I, Section 8, Clause 3 (Interstate Commerce Clause), and the Due Process of Law and Equal Protection Clauses of the Fourteenth Amendment of the U.S. Constitution. Plaintiff Phillip Truesdell also alleges, pursuant to 42 U.S.C. § 1983, the deprivation of rights secured by the Privileges or Immunities Clause of the Fourteenth Amendment.

10. Jurisdiction over their claims for declaratory and injunctive relief is vested in this Court by 28 U.S.C. §§ 1331 (federal question jurisdiction), 1343 (civil rights jurisdiction), and 2201-2202 (the Declaratory Judgment Act).

11. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), on the grounds that all or a substantial part of the acts giving rise to Plaintiffs' claims occur in Frankfort, Kentucky, which is located in the Eastern District of Kentucky (*see* 28 U.S.C. § 97(a)).

## PARTIES

### Plaintiffs

12. Plaintiff Phillip Truesdell is a United States citizen and resident of Ripley, Ohio. Mr. Truesdell is the sole owner of Plaintiff Legacy Medical Transport, LLC, which is registered in Ohio.

13. Plaintiff Legacy Medical Transport, LLC, is a family-run, non-emergency ground ambulance service located in Aberdeen, Ohio. It provides transportation by ambulance in non-emergency situations for people who have special, medical-related travel needs.

14. Given the business's proximity to Kentucky, Plaintiffs wish to offer Class I[2] non-emergency ground ambulance transportation from Kentucky to Ohio, or intrastate trips within Kentucky, but they cannot do so without risking fines because they do not possess a Certificate.

### Defendants

15. Each Defendant is sued only in his or her official capacity.

16. Defendant Adam Meier is the Secretary of the Cabinet for Health and Family Services. Plaintiffs are informed and believe, and on that basis allege, that Mr. Meier has ultimate responsibility for enforcing the Certificate requirement, the protest procedure, and the

---

[2] A Class I ground ambulance provider is defined as a company that provides "basic life support or advanced life support services to all patients for emergencies *or* scheduled ambulance transportation which is medically necessary." KRS § 311A.030 (emphasis added). Other classes of ambulance services include mobile intensive care units, first response providers who do not transport patients, and air ambulances. Plaintiffs seek only to operate as a Class I provider.

"need" requirement—the "Competitor's Veto" established by KRS §§ 216B.061(1), 216B.085, 900 KAR 6:070 § 2(2), 6:090 § 3, and challenged herein.

17. Defendants Kristi Putnam and Timothy Feeley are Deputy Secretaries of the Kentucky Cabinet for Health and Family Services. Defendant Steven Davis is the Cabinet's Inspector General. In their official capacities, Defendants are empowered to approve or deny Certificates, to adopt rules to implement the protest procedure and "need" requirement challenged by this lawsuit, to enforce those rules, and to enjoin, fine, and otherwise prohibit Plaintiffs and other similarly situated persons from providing ground ambulance transportation without a Certificate. KRS § 216B.040.

## FACTUAL ALLEGATIONS

### I

### THE CHALLENGED LAW AND ITS ENFORCEMENT

18. KRS § 216B.061 makes it unlawful for ground ambulance providers to operate without first obtaining a "Certificate of Need" from the Cabinet.

19. Any person who operates a ground ambulance company without a Certificate is subject to a fine of one percent of the capital expenditure involved, but not less than $500 for each violation. KRS § 216B.990.

20. In order to obtain a Certificate, a person must first submit an application to the Cabinet and pay the $1,000 application fee. 900 KAR 6:020.

21. After the Cabinet receives an application and deems it complete, it is required by law to give public notice of the application via the "Certificate of Need Newsletter." 900 KAR 6:065. The Kentucky State Health Plan further requires applicants to document that all existing

ground ambulance providers within the applicant's proposed geographic service area have been given notice of the applicant's intent to obtain a Certificate.[3]

22. After the Cabinet gives public notice, any "affected person"—including any established ground ambulance company—may effectively "protest" the application and request a public hearing to oppose the application. KRS § 216B.085.

23. Plaintiffs are informed and believe, and on that basis allege, that "affected persons" can request a hearing for any reason, including the bare reason that they do not want to face any new competition.

24. A hearing is akin to civil litigation. Parties may conduct discovery, submit briefs, make opening statements, call and examine witnesses under oath, cross-examine opposing witnesses, and offer evidence. 900 KAR 6:090 § 3(11). Corporations must be represented by an attorney licensed to practice in the Commonwealth of Kentucky. 900 KAR 6:090 § 3(12).

25. If no hearing is requested, the Cabinet decides whether to grant or deny the applicant without a hearing based on a review of the application materials alone. If a hearing request is withdrawn, the Cabinet must cancel the hearing and make its decision based on its review of the application materials. 900 KAR 6:090 § 3(4).

26. Plaintiffs are informed and believe, and on that basis allege, that over the past ten years, every request for hearing filed in response to an application to operate as a Class I ground ambulance provider has been filed by an existing Certificate-holder. Not one request has been filed by a member of the general public (i.e., a consumer, or an individual without a financial interest in an established ground ambulance company).

---

[3] The 2018 Update to the 2017-2019 State Health Plan is incorporated into the Kentucky Administrative Regulations pursuant to 900 KAR 5:020 § 2(1).

27. Plaintiffs are informed and believe, and on that basis allege, that no hearing request has ever been filed for reasons related to an applicant's fitness to operate.

28. At the hearing, applicants bear the burden of bringing witnesses or providing documentary evidence that can establish there is a public "need" for the proposed service. 900 KAR 6:070 § 2(2).

29. Affected persons may participate as a party to any hearing in opposition to the application. 900 KAR 6:090 §§ 3(7), 3(11). In particular, affected persons may testify, offer evidence, and otherwise participate for the purpose of demonstrating that there is no public "need" for a new operator.

30. Plaintiffs are informed and believe, and on that basis allege, that when determining whether a new business is "needed," the Cabinet considers whether granting the Certificate will harm the economic interests of established ambulance operators. For example, the Cabinet requires applicants to show that there is enough public demand for a new service such that granting a new Certificate will not cause an existing Certificate-holder to lose business.

31. Plaintiffs are informed and believe, and on that basis allege, that the "need" requirement has no relationship to an applicant's fitness to operate, or any valid health or safety rationale. Instead, the "need" requirement operates to deny applicants the ability to operate to protect established ambulance providers from competition.

32. The effect of the protest procedure speaks for itself. In practice, protested applications are almost always denied, and unprotested applications are almost always granted. Plaintiffs are informed and believe, and on that basis allege, that over the past ten years, at least

twenty-three applications[4] to establish a new Class I ground ambulance service have been decided under the Cabinet's "formal review" process. Sixteen of those twenty-three applications were protested by a Certificate-holder.

33. All *un*protested applications were granted.

34. In seven of the sixteen protested cases, the applications were denied.

35. In seven other protested cases, the protesting businesses subsequently withdrew their protest after the applicant agreed to limit the scope of their service area. After the protests were withdrawn, the applications were granted.

36. In the final two protested cases, the applicants were granted a Certificate despite the protest. In sum, applications are rarely granted in the face of an existing business's opposition.[5]

### PHILLIP TRUESDELL AND HIS BUSINESS, LEGACY MEDICAL TRANSPORT

37. Phillip Truesdell started Legacy Medical Transport in Ohio in 2017. Phillip began the business to support himself and his family, to supply his community with an essential service, and to keep his children employed nearby.

38. Phillip started Legacy with just one ambulance. In his two years of operating the company, Phillip has grown Legacy to seven ambulances, and it now performs between 1,500 and 2,000 trips a year.

---

[4] The Cabinet's website does not yet have records reflecting the outcomes of some of the most recent applications to operate as a Class I ground ambulance provider.

[5] The two applications that were granted over an existing business's protest were based on exceptional facts. In one case, the protestant had been convicted of Medicare and Medicaid fraud and admitted returning an employee to work who had been criminally charged with abusing a patient, even though the investigation into that incident had not been completed. He also admitted he might have to close his doors if sentenced to prison time. In the other case, the applicant presented evidence that ambulance wait times likely contributed to a Kentucky resident's death.

39. Legacy's customers include people who need transportation by ambulance because they have non-emergency medical travel needs. For example, some customers need extra oxygen or are on dialysis, and therefore require oxygen tanks or IVs. Others are non-ambulatory or have muscle weakness, and therefore need transportation by stretcher. It provides an essential service for people who cannot travel by conventional means.

40. Legacy satisfies all legal requirements for operating in Ohio.

41. Due to the company's proximity to the Kentucky border, many of Legacy's clients require interstate transportation between Ohio and Kentucky. Under Kentucky law, Legacy may transport clients from Ohio to Kentucky, but it may not return them to Ohio, nor may it transport customers between locations in Kentucky, without first obtaining a Certificate.

42. Plaintiffs regularly receive requests for trips originating in Kentucky, including requests from customers that Legacy lawfully brought to Kentucky for medical appointments and who need transportation to return home to Ohio.

43. Plaintiffs are ready, willing, and able to provide non-emergency ambulance transportation from Kentucky to Ohio, and between locations in Kentucky. The only legal obstacle to doing so is the Certificate requirement.

44. Because they do not have a Certificate, Plaintiffs have declined all opportunities to provide ground ambulance transportation originating in Kentucky and have informed inquiring consumers that they are unable to provide such services.

**PLAINTIFFS' INJURY**

45. Plaintiffs are unable to lawfully provide interstate ground ambulance services from Kentucky to Ohio, and intrastate services within Kentucky, only because they do not possess a Certificate.

46. Plaintiffs will be subject to serious penalties if they offer ground ambulance transportation originating in Kentucky without obtaining a Certificate.

47. Plaintiffs are unwilling to incur fines in order to pursue their business of ground ambulance transportation in Kentucky.

48. Plaintiffs are informed and believe, and on that basis allege, that the protest procedure and "need" requirement allow established ground ambulance companies to exercise an effective "Competitor's Veto" to prevent new businesses from entering the ground ambulance transportation industry in Kentucky.

49. Plaintiffs are informed and believe, and on that basis allege, that under color of state law, Defendants deny Certificates to ground ambulance applicants to protect existing ground ambulance companies from new competition.

50. Plaintiffs are informed and believe, and on that basis allege, that the challenged laws violate their right to engage in interstate commerce without providing any putative local benefits that could lawfully justify such a restraint.

51. Plaintiffs are informed and believe, and on that basis allege, that the challenged laws deprive them of the liberty of pursuing their chosen trade without serving any legitimate governmental interest.

52. Plaintiffs are informed and believe, and on that basis allege, that the challenged laws treat them differently than others similarly situated without serving any legitimate governmental interest.

53. Plaintiffs have concrete and specific plans to offer and provide ground ambulance services within Kentucky, and interstate trips from Kentucky to Ohio, at such time as the

challenged laws are declared unconstitutional and enjoined as applied to ground ambulance transportation.

54. But for the Certificate requirement, Plaintiffs would engage in the business of providing ground ambulance transportation originating in Kentucky today.

## LEGAL CLAIMS

### Count I: Commerce Clause

55. Plaintiffs allege and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

56. The Interstate Commerce Clause of the U.S. Constitution, Article I, Section 8, Clause 3, delegates to Congress the exclusive power to regulate interstate commerce. This power operates as a restraint on the legislative power of the states even when Congress has not expressly exercised that power, a doctrine known as the "dormant" Commerce Clause.

57. Under this dormant aspect of the commerce power, any burden a state places on interstate commerce cannot be excessive in relation to its putative local benefits.

58. Kentucky's Certificate requirement prevents out-of-state ground ambulance providers like Plaintiffs from offering trips originating in Kentucky without undertaking the costly, burdensome, and unconstitutional process of applying for and receiving a Certificate.

59. While out-of-state ground ambulance providers like Plaintiffs may lawfully take Ohio residents to medical appointments and facilities in Kentucky, they may not take those same clients back to Ohio without obtaining a Certificate.

60. As a result of the Certificate requirement, Kentucky has substantially burdened or restricted the provision of intrastate ground ambulance services within Kentucky, and interstate ground ambulance services from Kentucky to other states, by out-of-state companies.

61. Kentucky's Certificate requirement places a substantial burden on the market for interstate ground ambulance services that is not justified by any putative local benefit.

62. Kentucky's Certificate requirement for ground ambulance companies does not achieve any legitimate local benefits. It permits the Cabinet to deny Certificates despite an applicant's qualifications to protect established in-state ground ambulance businesses from competition.

63. Economic protectionism is not a constitutionally legitimate local benefit.

64. Plaintiffs have been suffering and will continue to suffer substantial and irreparable harm unless Kentucky's Certificate requirement for ground ambulance services is declared unlawful and enjoined by this Court.

## Count II: Due Process

65. Plaintiffs allege and incorporate by reference each and every allegation set forth in the proceeding paragraphs of this Complaint.

66. Plaintiffs may not engage in their chosen occupation in Kentucky unless they submit to an expensive and burdensome Certificate requirement.

67. The Certificate law, and in particular the protest procedure and "need" requirement, establish a "Competitor's Veto" that deprives Plaintiffs of their constitutional right to pursue their chosen occupation free of arbitrary governmental interference.

68. The protest procedure and "need" requirement do not bear a rational relationship to protecting the public health, safety, or welfare.

69. The purpose of the protest procedure and "need" requirement is to protect established Kentucky ground ambulance companies from economic competition.

70. The practical effect of the protest procedure and "need" requirement is to protect established Kentucky ground ambulance companies from economic competition.

71. The protest procedure and "need" requirement are not rationally related to any legitimate governmental interest that the state purports to have.

72. By enforcing the arbitrary, irrational, and fundamentally unfair protest procedure and "need" requirement, Defendants, acting under color of state law, are depriving Plaintiffs of their constitutional right to earn a living in a chosen profession without due process of law.

73. Plaintiffs are suffering and will continue to suffer substantial and irreparable harm unless the arbitrary, irrational, and fundamentally unfair procedures established by Kentucky statutes and regulations are declared unlawful and enjoined by this Court.

## Count III: Equal Protection

74. Plaintiffs allege and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

75. The Certificate requirement draws an arbitrary and irrational distinction between ground ambulance providers who may originate trips in Kentucky and those who may not.

76. Whether a ground ambulance provider may originate trips in Kentucky is not determined by whether the business provides safe or affordable services.

77. Plaintiffs are as qualified in all relevant respects to offer and provide ground ambulance services originating in Kentucky as ground ambulance businesses that possess a Certificate from the Cabinet.

78. The Equal Protection Clause of the Fourteenth Amendment does not allow the government to treat similarly situated persons differently unless the reasons for doing so bear a rational relationship to a legitimate governmental interest.

79. The protest procedure and "need" requirement bear no rational relationship to protecting public health or safety. Instead, they serve to protect Certificate-holders from competition.

80. By enforcing these procedures, Defendants, acting under color of state law, are irrationally and arbitrarily discriminating against Plaintiffs and in favor of existing ground ambulance businesses in violation of Plaintiffs' right to equal protection of the laws.

81. Plaintiffs are suffering and will continue to suffer substantial and ongoing harm unless the discrimination established by Kentucky's Certificate requirement is declared unlawful and enjoined by this Court.

### Count IV: Privileges or Immunities

82. Plaintiffs allege and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

83. The Privileges or Immunities Clause of the Fourteenth Amendment protects the right to earn a living in a lawful occupation of one's choice.

84. By mandating an arbitrary and discriminatory protest procedure and "need" requirement for a Certificate to operate as a ground ambulance company, Defendants acting under color of state law, arbitrarily and unreasonably interfere with Plaintiff Truesdell's constitutional right to earn a living in a lawful occupation in violation of the Privileges or Immunities Clause.

85. Plaintiffs are suffering and will continue to suffer substantial and irreparable harm unless the arbitrary, irrational, and fundamentally unfair procedures established by Kentucky's Certificate requirement are declared unlawful and enjoined by this Court.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1.  an entry of judgment declaring that Kentucky's Certificate program, particularly the protest procedure and "need" requirement established by KRS §§ 216B.061(1), 216B.085, 900 KAR 6:070 § 2(2), 6:090 § 3, is unconstitutional, facially and as applied to Plaintiffs, to the extent that it unduly burdens interstate commerce in ground ambulance transportation in violation of the Interstate Commerce Clause of the U.S. Constitution;

2.  an entry of judgment declaring that Kentucky's Certificate program, particularly its protest and hearing procedure established by KRS §§ 216B.061(1), 216B.085, 900 KAR 6:070 § 2(2), 6:090 § 3, is unconstitutional, facially and as applied to Plaintiffs, for depriving Plaintiffs of liberty without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;

3.  an entry of judgment declaring that Kentucky's Certificate program, particularly the protest procedure and "need" requirement established by KRS §§ 216B.061(1), 216B.085, 900 KAR 6:070 § 2(2), 6:090 § 3, is unconstitutional, facially and as applied to Plaintiffs, for depriving Plaintiffs of equal protection of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

4.  an entry of judgment declaring that Kentucky's Certificate program, particularly its protest procedure and "need" requirement established by KRS §§ 216B.061(1), 216B.085, 900 KAR 6:070 § 2(2), 6:090 § 3, is unconstitutional, facially and as applied to Plaintiff Truesdell, for abridging Plaintiff Truesdell's privileges or immunities of citizenship, in violation of the Privileges or Immunities Clause of the Fourteenth Amendment to the U.S. Constitution;

5.  an entry of a permanent injunction against Defendants prohibiting the enforcement of these statutory provisions, as well as any and all implementing administrative rules and regulations, and the practices and policies by which Defendants enforce these provisions;

6.    an award of attorney fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and an award of further legal and equitable relief as this Court may deem just and proper.

DATED: September 24, 2019.

Respectfully submitted,

| PACIFIC LEGAL FOUNDATION | BILLINGS LAW FIRM, PLLC |
|---|---|
| Anastasia P. Boden, Cal. Bar No. 281911* <br> Email: ABoden@pacificlegal.org <br> 930 G Street <br> Sacramento, California 95814 <br> Telephone: (916) 419-7111 <br> Facsimile: (916) 419-7747 <br><br> Mollie Williams, Cal. Bar No. 322970* <br> Email: MWilliams@pacificlegal.org <br> 930 G Street <br> Sacramento, California 95814 <br> Telephone: (916) 419-7111 <br> Facsimile: (916) 419-7747 | /s/ Christopher L. Thacker <br> CHRISTOPHER L. THACKER <br> Email: cthacker@blfky.com <br> 145 Constitution Street <br> Lexington, Kentucky 40507 <br> Telephone: (859) 225-5240 <br> Facsimile: (859) 225-5241 <br><br> *Counsel for Plaintiffs* <br> *Phillip Truesdell and* <br> *Legacy Medical Transport LLC* |

*pro hac vice pending*

## CERTIFICATE OF SERVICE

 This is to certify that a true and accurate copy of the foregoing was filed through the Court's CM/ECF system on September 24, 2019:

           /s/ Christopher L. Thacker
           CHRISTOPHER L. THACKER

           *Counsel for Plaintiffs*
           *Phillip Truesdell and*
           *Legacy Medical Transport LLC*