UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| PHILLIP TRUESDELL, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil No. 3:19-cv-00066-GFVT |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| ERIC FRIEDLANDER, in his official ) | **&** |
| capacity as Secretary of the Kentucky ) | **ORDER** |
| Cabinet for Health and Family Services, *et* ) | |
| *al*., | |
| | |
| Defendants. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendants' Motions to Dismiss. Parties asks this Court to wade into the complex matter of state healthcare policy as it pertains to Kentucky's Certificate of Need program. Plaintiffs contend that they are entitled to pursue discovery on their claims that the protest, hearing, and need provisions of the Kentucky statutes applicable to ambulance companies, violate the Dormant Commerce Clause and Fourteenth Amendment of the United States Constitution. However, Defendants argue that Plaintiffs do not have standing to pursue their claims, and even if they did, they have failed to plausibly plead any claims for which relief may be granted. For the reasons set forth below, Defendants' motions will be GRANTED in part and DENIED in part.

**I**

Plaintiff, Legacy Medical Transport, LLC, is a ground ambulance service that currently operates in Ohio but wishes to operate in Kentucky, as well. [R. 17 at ¶ 2.] Legacy's main service includes transportation services by ambulance in non-emergency situations. *Id.*

Plaintiffs can currently operate legally in Ohio, but they are unable to offer their services in Kentucky due to their lack of a Certificate of Need (CON) from the state. *Id*. at ¶ 3.

In Kentucky, individuals and companies involved in ambulance services are required by statute to obtain a CON from the Cabinet for Health and Family Services. *Id*. (citing KRS §§ 216B.061; 216B.015(13)). Any person who operates a ground ambulance company without a CON is subject to a fine of one percent of the capital expenditure involved, but not less than $500 for each violation. KRS § 216B.990. Plaintiffs wish to obtain a Class I Certificate so they can transport between Kentucky and Ohio, and intrastate trips within Kentucky, but they cannot do so without risking such fines. [R. 17 at ¶ 14.] The statutes and corresponding regulations establish a multi-step process to obtain a CON. In order to start the process, an entity or person must submit an application to the Cabinet for Health and Family Services and pay a $1,000 fee. 900 KAR 6:020. There are two levels of review for CON applications—formal review and non-substantive review. KRS 216B.040; KRS 216B.095. Applications subject to formal review are evaluated using five criteria: consistency with plans; need and accessibility; interrelationships and linkages; costs; economic feasibility and resources availability; and quality of services. KRS 216B.010.

After an applicant submits its completed application, the Cabinet puts the application on public notice via its CON newsletter. 900 KAR 6:065; 6.060. This allows "Affected Parties" to request a public hearing on the application. KRS 216B.085(1). The hearing is before an independent hearing officer from the Cabinet and any party has the right to be represented by counsel. KRS §§ 216B.085(2); 216B.0085(3). The applicant may provide witnesses and evidence to show consistency with the review criteria and opposing Affected Parties may present evidence and testimony to support the opposite conclusion. KRS § 216B.085(3). Plaintiffs state

in practice, the Cabinet "bases its determination of 'need' on whether the applicant will harm the financial interests of the existing ground ambulance companies. In order to prove 'need,' an applicant must prove that there is enough demand for ambulance services such that the applicant will not take away any customers from the current Certificate-holders." [R. 17 at ¶ 5.]

After the hearing, the hearing officer either approves or disapproves the application based upon the administrative record. KRS § 216B.085(4). If a hearing was not requested, the hearing officer's decision is based upon the application. *Id*. The hearing officer's final decision may be appealed to the Franklin Circuit Court. KRS § 216B.115. Defendants point out that obtaining a CON does not entitle a recipient to operate a Class I ground ambulance service in Kentucky—it is only a prerequisite to obtaining a required license from the Kentucky Board of Emergency Medical Services (KBEMS). [R. 36 at 5.] A CON recipient has 90 days from the date of issuance of its CON to obtain a license from KBEMS. 202 KAR 7:545, Section 1(3).

In 2018, Plaintiffs applied for a CON to operate as a Class I ambulance service. [R. 17 at ¶ 45.] CON-holding ambulance companies protested their application, requiring Plaintiffs to attend a hearing. *Id*. Plaintiffs explain that during the hearing, they "were asked questions related to whether allowing them to operate in Kentucky would 'harm' the existing businesses." *Id*. Plaintiffs were ultimately denied a CON, "in part, because the Cabinet determined they could not prove there was a 'need' for a new business." *Id*.

Plaintiffs state that the protest procedure and "need" requirement create a "Competitor's Veto." *Id*. at ¶ 6. They assert that "Certificate applications are rarely granted in the face of an existing business' opposition, and even where they are, they are only granted after the applicant expends significant resources proving they won't harm a protesting business. [R. 37 at 5.] Plaintiffs do not challenge the denial of their CON application or the entire CON program. [R.

3

17 at ¶ 46.] Instead they claim that the protest and hearing process currently followed infringe on their constitutional right to pursue the occupation of providing ambulance services in Kentucky in violation of due process. *Id*. at ¶ 71. They also argue that such procedures violate the Commerce Clause by placing an undue burden on the interstate market for ground ambulance services. *Id*. at ¶ 59–68. Further, Plaintiffs argue that the protest and hearing procedures violate the equal protection clause because they arbitrarily favor existing CON holders over new applicants. *Id*. at ¶ 84. Finally, Plaintiffs assert that the statutes violate the privileges and immunities clause. *Id*. at ¶ 88.

      Defendants first moved to dismiss the Original Complaint [R. 16] but Plaintiffs filed an Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). [R. 17.][1] Thereafter, Patient Transport Services, Inc. filed a Motion to Intervene [R.18], which the Court ultimately granted [R. 34]. The Kentucky Hospital Association also filed a Motion to Intervene [R. 38], but the Court denied their request based on unnecessary duplication and undue delay [R. 48]. However, the Court permitted the Kentucky Hospital Association to file a memorandum *amicus curiae* in support of their position, which they acted upon. [R. 51.] The Defendants, including Patient Transport Services now move to dismiss Plaintiffs' Amended Complaint based upon a lack of subject-matter jurisdiction and failure to state a claim. [R. 33; R. 36.]

---

[1] The filing of the First Amended Complaint rendered the Motion to Dismiss the Original Complaint moot. *Clark v. Johnston*, 413 F. App'x 804, 811 (6th Cir. 2011) ("When a pleading is amended pursuant to Federal Rule of Civil Procedure 15(a), the amended pleading supersedes the original pleading, i.e., 'the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading.'" (citations omitted)). The parties clearly recognized this fact, which is why Defendants re-filed their motion to dismiss after Plaintiffs moved to amend. Thus, Defendants' motion to dismiss [R. 16] is denied as moot.

## II

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may assert lack of subject-matter jurisdiction as a defense. A motion to dismiss under Rule 12(b)(1) is different from a motion to dismiss under Rule 12(b)(6) because it challenges the Court's power to hear the case before it.  When jurisdiction is challenged under this rule, the burden is on the plaintiff to prove jurisdiction exists.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  In answering this question, the Court is "empowered to resolve factual disputes" and need not presume that either parties' factual allegations are true.  *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint.  In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff."  *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted).  The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences."  *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

### A

First, Defendants contend Plaintiffs lack standing to bring this suit.  [R. 33-1 at 6.] Standing is a threshold inquiry in every federal case which may not be waived by the parties.

*See, e.g., Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Planned Parenthood Ass'n of Cincinnati, Inc. v. Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987). "To satisfy the 'case' or 'controversy' requirement' of Article III, which is the 'irreducible constitutional minimum' of standing, a plaintiff must, generally speaking, demonstrate that he has suffered an 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citations omitted). The elements of standing "are more than just pleading requirements." *Airline Prof. Ass'n v. Airborne, Inc.*, 332 F.3d 983, 988 (6th Cir. 2003). Instead, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.* with the manner and degree of evidence required at the successive stages of the litigation." *Id*.

The Court concludes that Plaintiffs have standing to pursue their claims. Courts have found plaintiffs have standing when seeking "prospective injunctive relief against enforcement of an occupational certification procedure that is allegedly unconstitutional." *Munie v. Koster*, 2011 WL 839608, at *3 (E.D. Mo. Mar. 7, 2011) (citing *Merrifield v. Lockyer*, 547 F.3d 978, 980 (9th Cir. 2008)); *see also Craigmiles v. Giles*, 312 F.3d 220, 223 (6th Cir. 2002). In so doing, courts acknowledge that regulated professionals suffer sufficient injury to establish standing because the licensing scheme limits them from performing certain activities related to their profession. *See Merrifield*, 547 F.3d at 980 n.1. Kentucky's CON requirement presents the same dynamic: medical professionals reasonably likely to provide services through their own resources are prevented from doing so due to the CON requirement; they therefore suffer a sufficient injury to establish standing. Accordingly, those who can demonstrate they would build or expand health services but are prohibited from doing so by the CON requirement have

6

established sufficient injury in fact. Challenging the CON requirement, in turn, establishes traceability and redressability.

Here, Plaintiffs have suffered an injury in fact due to their inability to receive a CON without first undergoing the challenged process. It is undisputed that Plaintiffs have already applied for a CON and been denied under the current process. Thus, Plaintiffs had to expend at least a modicum of time and financial resources to pursue their CON application—time and financial resources they would not have had to expend in the absence of the CON requirements they now challenge. These costs of pursuing a CON are "concrete and particularized." *Lujan*, 504 U.S. at 560. Further, Plaintiffs could avoid future costs of the same nature if enforcement of the challenged CON regulations are enjoined.

The challenged legislation is obviously fairly traceable to Defendants since they are responsible for enforcing the CON program. The main argument between parties centers around the redressability requirement. Defendants assert that "even if Plaintiffs are successful in invalidating Kentucky's CON law, they cannot provide ambulance services in Kentucky unless they obtain a license from KBEMS." [R. 36 at 6.] They explain that it is clear from the Amended Complaint, Plaintiffs do not meet the licensure requirements of 202 KAR Chapter 7. [R. 33-1 at 8.] However, at this stage in the litigation, this distinction does not defeat the Plaintiffs' proffer or standing. For purposes of this motion, they have met the threshold inquiry of standing by adequately pleading an injury, causation, and redressability. *See Cacchillo v. Insmed, Inc.*, 638 F.3d 401 (2d Cir. 2011) ("Plaintiff's burden to demonstrate standing increases over the course of litigation.").

A favorable decision would redress the injury because, if this Court were to grant the relief requested, Plaintiffs could reapply for a CON without being subject to the protest

7

procedure and need requirement. The cases cited by Plaintiffs, while not identical to the case-at-hand, are instructive. In *Bruner v. Zawacki*, the court denied a similar argument, finding that "A favorable decision by this Court would redress the injury, not because the Plaintiffs would automatically be granted a Certificate, but because the unconstitutional obstacle would be removed from their path to operate a moving company in the Commonwealth." 997 F. Supp. 2d 691, 687 (E.D. Ky. 2014). Although Defendants attempt to distinguish these cases, they offer no precedent to support the proposition that Plaintiffs must fully comply with statutes they allege are unconstitutional. Because Plaintiffs have properly pled standing to survive a motion to dismiss, the Court will not dismiss the claims on this ground.

**B**

The Commerce Clause of the United States Constitution endows Congress with the power to "regulate commerce with foreign Nations, and among the several States, and with the Indian tribes[.]" Art. I, § 8, cl. 3. Inherent in this grant of power to Congress is a limitation placed upon the states. "Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 644 (6th Cir. 2010) (quoting *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984)). "This self-executing limitation is often referred to as the 'negative' or 'dormant' aspect to the Commerce Clause." *Eastern Ky. Resources v. Fiscal Court*, 127 F.3d 532, 539–40 (6th Cir. 1997) (citing *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175 (1995)).

The dormant Commerce Clause prohibits states from enacting statutes or regulations aimed at economic protectionism that are "designed to benefit in-state economic actors by

8

burdening out-of-state actors." *Id.* at 540.  The standard for evaluating alleged violations of the dormant Commerce Clause is two-tiered. *Id.* "The first step involves determining whether the statute directly burdens interstate commerce or discriminates against out-of-state interests." *Id.* If the challenged law is not discriminatory and "has only indirect effects on interstate commerce and regulates evenhandedly," the Court applies the *Pike* balancing test. *Id.* at 644; *see also Tennessee Scrap*, 556 F.3d at 449.  Since Kentucky's CON laws indisputably treat in-state and out-of-state applicants the same, Plaintiffs allege the second type of claim, which is that Kentucky's CON laws put an "undue burden" on interstate commerce.  [R. 17 at ¶ 59–68.]

Even laws that are applied evenhandedly and impose only an incidental burden on interstate commerce are unconstitutional if the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits.  *Department of Revenue of Kentucky v. Davis*, 553 U.S. 328, 338–39 (2008) (citing *Pike*, 397 U.S. at 142).  The putative benefits of a challenged law are evaluated under the rational basis test, though "speculative" benefits will not pass muster. *Medigen of Ky., Inc. v. Pub. Serv. Comm'n*, 985 F.2d 164, 167 (4th Cir. 1993). The *Pike* test requires close examination since courts must assess a statute's burdens, especially when the burdens fall predominantly on out-of-state interests. *Yamaha Motor Corp. v. Jim's Motorcycle, Inc.*, 401 F.3d 560, 569 (4th Cir. 2005).  The test is therefore deferential but not toothless.  *See Davis*, 553 U.S. at 339.

In their Amended Complaint, Plaintiffs allege that Kentucky's CON program substantially burdens the interstate market for ground ambulance services.  [R. 17 at ¶ 65.] Plaintiffs specifically state that "Kentucky's Certificate requirement prevents out-of-state ground ambulance providers like Plaintiffs from offering trips in Kentucky without undertaking the costly, burdensome, and unconstitutional process of applying for and receiving a Certificate."

9

*Id*. at ¶ 62. Plaintiffs also allege that it unduly burdens all providers who wish to provide transportation between Kentucky and other states. *Id*. at ¶¶ 63, 64. To substantiate this claim, Plaintiffs explain how the protest procedure drives up the cost of applying for a CON and "protested applications are almost always denied (on the grounds that there is no 'need' for competing services)." *Id*. at ¶¶ 32–37; [R. 41 at 6.] This has resulted in a scarcity of ambulance services in Kentucky, "as people have died waiting for an ambulance." [R. 17 at ¶ 36 n.6; R. 41 at 8.]

Plaintiffs further contend that Kentucky's CON program does not actually achieve any legitimate local benefits. *Id*. at ¶ 66. As such, Plaintiffs allege that only existing businesses take advantage of the protest procedure for only self-interested reasons. *Id*. at ¶¶ 23, 36. This results in the denial of new ambulance providers from entering the market despite the qualifications of the applicant in order to protest established businesses from competition. *Id*. at ¶¶ 5, 66–67. Plaintiffs emphasize that this is not a legitimate putative local benefit since the law is unrelated to protecting the public, and instead in place to protect the financial interests of current CON holders. *Id*. at ¶¶ 65–67. The Court concludes that these facts stated in the Amended Complaint are sufficient to state a plausible claim under the dormant Commerce Clause.

Here, the parties do not agree about either the burden on interstate commerce or about what benefits the challenged law is actually achieving. By its very nature, the *Pike* balancing test is a factual inquiry. *Colon Health Ctrs. Of Am., LLC v. Hazel*, 733 F.3d 535, 546 (4th Cir. 2013). "If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Pike*, 397 U.S. at 142. Thus, this Court will not "attempt to forecast what further

10

investigation may demonstrate. The fact-intensive character of this inquiry, however, counsels against a premature dismissal." *Colon Health Ctrs. of Am.*, 733 F.3d at 546. As noted above, in order to survive a motion to dismiss, Plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. In the instant case, Plaintiffs have sufficiently "nudged their claims across the line from conceivable to plausible." *Id*. at 570. This particular challenge presents issues of fact that cannot be properly resolved on a motion to dismiss. Thus, this Court will deny Defendants' motion to dismiss in regard to Plaintiffs' dormant Commerce Clause claim.

## C

Defendants next seek dismissal of Plaintiffs' substantive due process claim. Plaintiffs contend that their liberty interest in pursuing their chosen occupation is offended by the statutory scheme because the CON protest procedure and need requirement act as a "Competitor's Veto." [R. 17 at ¶ 71.] The Due Process Clause of the Fourteenth Amendment provides that a state may not deprive a citizen of life, liberty, or property without due process of law. U.S. Const. Amend. XIV § 1. The Fourteenth Amendment "prohibits the government from imposing impermissible substantive restrictions on individual liberty," for example, a liberty interest to engage in a chosen occupation. *See Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999) (recognizing that "the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation"). "Generally speaking, freedom to choose and pursue a career, to engage in any of the common occupations of life, qualifies as a liberty interest which may not be arbitrarily denied by the State." *Wilkerson v. Johnson*, 699

F.2d 325, 328 (6th Cir. 1983) (citing *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)).  Such legislation "violates the Due Process Clause where it imposes burdens without any rational basis for doing so."  *Sheffield v. City of Fort Thomas, Ky*., 620 F.3d 596, 613 (6th Cir. 2010) (quoting *United States v. Comstock*, 560 U.S. 126, 151 (2010) (Kennedy, J., concurring) (internal quotation marks omitted)).  Thus, legislation regulating a profession or trade carries "a presumption of legislative validity, and the burden is on the challenger to show that there is no rational connection between the enactment and a legitimate government interest."  *Am. Exp. Travel Related Servs. Co., Inc. v. Ky*., 641 F.3d 685, 689 (6th Cir. 2011).

The parties in this case agree that Kentucky's CON laws and regulations are subject to rational basis review.  Rational basis is "highly deferential," and statutes fail under this standard of review "only in rare or exceptional circumstances."  *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007).  In cases of this sort, "regulatory legislation affecting ordinary commercial transactions is not to be pronounced unconstitutional unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators."  *Am. Exp. Travel Related Servs.*, 641 F.3d at 689 (quoting *United States v. Carolene Prods. Co*., 304 U.S. 144, 152 (1938)).  An "exquisite evidentiary record" from the state is not required, only "rational speculation" connecting the regulation requirements to a legitimate purpose, even one "unsupported by evidence or empirical data."  *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).  In fact, the Supreme Court has explained that under the rational basis standard of review, the reasoning supporting the state's legislative action is "constitutionally irrelevant."  *R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (quoting *Flemming v. Nestor*, 363 U.S. 28 603 (1960)).  The Court will uphold the statute or regulation "if there is any reasonably conceivable

state of facts that could provide a rational basis." *Walker v. Bain*, 257 F.3d 660, 668 (6th Cir. 2001).

The Court holds that Plaintiffs' Amended Complaint has failed to state a plausible substantive due process claim. Notably, Plaintiffs have the burden "to establish that the legislature has acted in an arbitrary and irrational way" and the burden to "negative every conceivable basis that might support" Kentucky's laws and regulations. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). Plaintiffs' Amended Complaint does not allege facts to satisfy this standard. Pursuant to KRS 216B.010, the purpose of Kentucky's CON program is

> To insure that the citizens of this Commonwealth will have safe, adequate, and efficient medical care; that the proliferation of unnecessary health-care facilities, health services, and major medical equipment results in costly duplication and underuse of such facilities, services, and equipment; and that such proliferation increases the cost of quality health care within the Commonwealth. Therefore, it is the purpose of this chapter to fully authorize and empower the Cabinet for Health and Family Services to perform any certificate-of-need function and other statutory functions necessary to improve the quality and increase access to health-care facilities, services, and providers, and to create a cost efficient health-care delivery system for the citizens of the Commonwealth.

Thus, the Kentucky General Assembly articulates that the main goal of the CON program, including the protest procedure and need criterion that Plaintiffs challenge, is to ensure "safe, adequate, efficient medical care." KRS 216B.010. As many Courts have recognized, public health and safety is clearly a legitimate, governmental interest. *City of Erie v. Pap's AM*, 529 U.S. 277, 120 S. Ct. 1382, 1395 (2000); *Schenck v. Pro-Choice Network of Western N.Y.*, 519 U.S. 357, 375-76 (1997); *Reno v. Flores,* 507 U.S. at 304; *Hodel v. Virginia Surface Mining and Reclamation Ass'n,* 452 U.S. 264, 300 (1981).

Plaintiffs allege that Kentucky's CON program forces them to face an arbitrary process whereby existing companies can protest their application and intervene in the hearing process for reasons unrelated to health or safety. [R. 41 at 10.] Plaintiffs further allege that the need

13

requirement forces applicants to show they will not take away business from the existing operators. *Id*. As Plaintiffs state, "the result is a system that denies entrepreneurs the right to enter the market for protectionist reasons." *Id*. Even accepting these allegations of the Amended Complaint as true, Plaintiffs have not alleged facts to show that Kentucky lacks a rational basis for its CON program requirements.

Instead of challenging Kentucky's CON program as a whole, Plaintiffs narrow their challenge by focusing on the protest procedure and need requirement. In a similar case that challenged Virginia's CON laws, the Fourth Circuit took the position that "we are disinclined to pick apart the Virginia statute specialty by specialty or to unravel a complex medical regulatory scheme strand by strand." *Colon Health Ctrs. of Am.*, 733 F.3d at 548. This Court takes the same approach and construes the legislative objective outlined in the statute above as applying to the CON process as a whole and declines to delve into the specific rational bases that support the public hearing provision and need criterion. Plaintiffs' characterization of specific processes within the CON program result as perfunctory business decisions demonstrates that the rationality of Kentucky's CON process is arguable. [R. 17 at 30.] The strength of the dispute over the reasonableness of Kentucky's CON process is "not within the competency of the courts to arbitrate." *Vance v. Bradley*, 440 U.S. 93, 111–12 (*quoting Rast v. Van Deman & Lewis Co.*, 240 U.S. 342, 48 357 (1916)). On the contrary, "it is the very admission that the facts are arguable that immunizes from constitutional attack the [legislative] judgment represented by this statute." *Id*.

Here, Plaintiffs have failed to plausibly rebut the State's asserted justifications for the CON program. Defendants, both in their briefs and implementing statutes, articulate a variety of legitimate purposes served by the program, including ensuring geographically convenient access

14

to healthcare for Kentucky residents at a reasonable cost. Plaintiffs' "cursory, unsubstantiated assertion that the statute fails to advance this purpose or any other is insufficient to merit further factual inquiry." *Colon Health Ctrs. of Am.*, 733 F.3d at 548. Therefore, the Court concludes that the Amended Complaint fails to state a substantive due process claim.

### D

Defendants also seek dismissal of Plaintiff's equal protection claim. The Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The purpose of the Fourteenth Amendment is "to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sadie v. City of Cleveland*, 718 F.3d 596, 601-02 (6th Cir. 2013) (quoting *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441, 445 (1923)).

"The basis of any equal protection claim is that the state has treated similarly-situated individuals differently." *Silver v. Franklin Twp. Bd. Of Zoning Appeals*, 966 F. 2d 1031, 1036 (6th Cir. 1992). Yet here there is no such classification in the challenged statutes. On their face, the challenged provisions treat all health care providers who are subject to them the same and apply the same requirements to them. Plaintiffs, therefore, can only argue the provisions have a discriminatory effect on a particular group. In support of their equal protection claim, Plaintiffs assert that Kentucky's CON program favors existing ground ambulance businesses over new applicants. [R. 17 at ¶ 84.] Thus, the distinction Plaintiffs attempt to make applies to a non-suspect economic class which is subject to rational basis.

Indeed, Plaintiffs concede that rational basis review applies. *Id.* at ¶ 82. Under rational basis review, legislative classifications are "presumed constitutional," and "cannot run afoul of

15

the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012) (quotation omitted). "[A] statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Commc'ns, Inc*., 508 U.S. at 313. Courts recognize that particularly in areas of "economic or social legislation," such as when "[d]efining the class of persons subject to a regulatory requirement," the legislature at times "must necessarily engage in a process of line-drawing," which "inevitably requires that some persons … be placed on different sides of the line." *Beach Communications, Inc*., 508 U.S. at 314 (internal citations omitted). In such cases, "the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." *Id*. (stating that particularly in areas of social and economic policy, "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.").

  As explained above, the Kentucky General Assembly has articulated sufficient justifications for the CON program provisions that survive rational basis scrutiny. The primary goals of enacting such a program, as articulated by Kentucky's legislature, are grounded in policy choices that advance providing safe, efficient, and quality health care. KRS 216B.010. Once again, Plaintiffs do not show why the legislature's stated reasons are irrational, but only assert that the challenged statue discriminates "in favor of existing ground ambulance businesses." [R. 17 at ¶ 84.] Plaintiffs only offer cursory, unsubstantiated assertions such as "[t]he protest procedure and 'need' requirement bear no rational relationship to protecting public health or safety." *Id*. at ¶ 83. But, as previously explained, this type of bare assertion will not

16

suffice to merit further factual inquiry. *Colon Health Ctrs. of Am., LLC*, 733 F.3d at 549. Again, Plaintiffs have not satisfied their burden to allege facts that would negate the bases that the General Assembly provided for in enacting such CON statutes. Thus, the Court holds that the Amended Complaint fails to state a plausible equal protection claim.

      Plaintiffs also emphasize that they are entitled to discovery on the underlying purpose of the protest procedure and need requirement, as an opportunity to show that public health and safety did not actually motivate the legislature to enact such measures. [R. 37 at 15-17.] The question of whether Kentucky's CON scheme lacks a rational basis is an issue of law for the Court. "This legal question is appropriate for decision in the context of a motion to dismiss." *Operation Badlaw, Inc. v. Licking Cnty. Gen. Health Dist. Bd. of Health*, 866 F. Supp. 1059, 1066 (S.D. Ohio 1992) aff'd, 991 F.2d 796 (6th Cir. 1993). The lack of discovery is not an independent reason to deny a Rule 12(b)(6) motion, which serves to test the sufficiency of the pleadings.[2] More importantly, under rational basis review, Kentucky, "has no obligation to produce evidence to sustain the rationality of a statutory classification" because its "legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Heller v. Doe*, 509 U.S. 312, 320–21 (1993). As such, Plaintiffs' request for discovery in regard to the Kentucky General Assembly's actual justifications for the CON process is disregarded as it relates to their Due Process and Equal Protection claims.

---

[2] *Iqbal*, 556 U.S. at 678–79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Cox v. Shelby State Cmty. Coll.*, 48 F. App'x 500, 503 (6th Cir. 2002) ("A 12(b)(6) motion simply tests the sufficiency of the pleadings, and does not resolve the facts of the case.").

### E

The Fourteenth Amendment provides, "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, § 1. The *Slaughter-House Cases*, 83 U.S. 36 (1872), limit application of the Privileges & Immunities Clause to rights "which ow[e] their existence to the Federal government, its National character, its Constitution, or its laws." *Id*. at 79.

Plaintiffs do not dispute that the Supreme Court's decision in the *Slaughter-House Cases* forecloses their Privileges and Immunities claim. [R. 37 at 13, n.11.] Rather, Plaintiffs seek to preserve this argument for further appellate review. *Id*. Because Plaintiffs do not plausibly allege a violation of any rights "which owe their existence to the Federal government, its National character, its Constitution, or its laws" recognized as such under Supreme Court precedent, the Court dismisses Plaintiffs' Privileges and Immunities claim.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED as** follows:

1. Defendants' Motion to Dismiss **[R. 16]** is **DENIED AS MOOT**;

2. Defendants' Motions to Dismiss **[R. 33; R. 36]** are **DENIED** with respect to Plaintiffs' Dormant Commerce Clause claim; and

3. Defendants' Motions to Dismiss **[R. 33; R. 36]** are **GRANTED** with respect to Plaintiffs' Due Process, Equal Protection, and Privileges and Immunities claims.

This the 31st day of August, 2020.

Gregory F. Van Tatenhove
United States District Judge

19