## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION

---

**PHILLIP TRUESDELL and LEGACY**
**MEDICAL TRANSPORT, LLC,**

     **Plaintiffs,**

       **v.**

**ERIC FRIEDLANDER, in his official capacity**
**as Secretary of the Kentucky Cabinet for**
**Health and Family Services, et al.,**

     **Defendants,**

**and**

**FIRST CARE OHIO, LLC,**

     **Intervenor-Defendant.**

**Civil Action No. 3:19-cv-00066-GFVT**

---

## PLAINTIFFS' OPPOSITION TO DEFENDANTS'
## MOTIONS TO DISMISS SECOND AMENDED COMPLAINT

Plaintiffs—a family-run ambulance company and its owner—seek to provide safe and reliable medical transportation in Kentucky. Though they are fit, willing, and able to operate, they have been denied that opportunity by a Kentucky law that requires new businesses to prove they are "needed" before operating. In practice, the Kentucky Cabinet for Health and Family Services defers to whether *existing businesses* think a new service is needed. If an existing business protests an application, that application is denied (absent extraordinary circumstances). Unprotested applications, by contrast, sail through. As this Court has ruled before, such a "Competitor's Veto" is unconstitutional. *Bruner v. Zawacki,* 997 F. Supp. 2d 691, 700 (E.D. Ky. 2014).

Plaintiffs filed this lawsuit two years ago to challenge the Certificate program under the Due Process, Equal Protection, and Privileges or Immunities Clauses of the Fourteenth Amendment and dormant Commerce Clause of the United States Constitution. Defendants moved to dismiss all claims and this Court granted that motion with respect to Plaintiffs' Fourteenth Amendment claims but denied that motion with respect to Plaintiffs' dormant Commerce Clause claims. R. 57. Plaintiffs then moved to amend their complaint to demonstrate that their due process and equal protection claims were also plausible. R. 62. This Court granted Plaintiffs' motion, despite Defendants' claims that doing so would be futile. R. 75. The Court ruled that while it would be an uphill battle on the merits, Plaintiffs had at least plausibly alleged that the "need" requirement is irrational in violation of due process and equal protection. *Id.*

Despite this Court's statements that the dormant Commerce Clause, equal protection, and due process claims may move forward, Defendants and Defendant-Intervenor[1] (a Certificate-holding ambulance company) have once again moved to dismiss by making the same claims they made in their previous motions to dismiss and in response to Plaintiffs' motion to amend, requiring this response. This Court should deny the motions to dismiss with respect to all claims except for the Privileges or Immunities Clause claim, which Plaintiffs seek only to preserve for appeal.

## STATEMENT OF THE CASE

Plaintiff Phillip Truesdell is the owner of Plaintiff Legacy Medical Transport, LLC—a family-run business based in an Ohio town near the Kentucky border. R. 63 at ¶ 2. Plaintiffs are fully qualified to perform both non-emergency and emergency medical transportation and have provided such service in Ohio since 2017. *Id.* ¶¶ 7, 54. Since starting the company with just one

---

[1] Defendants and Defendant-Intervenor are collectively referred to as "Defendants" throughout.

ambulance, Truesdell has grown his business to seven ambulances and now performs between 1,500 and 2,000 trips per year. *Id.* ¶¶ 54–55.

Given their proximity to the Kentucky border and public demand for their services, Plaintiffs wish to provide medical transport in Kentucky. *Id.* ¶¶ 2, 54, 59. Yet Plaintiffs are barred from doing so by a law that, in effect, creates a "Competitor's Veto" over any new businesses. R. 63 at ¶ 67.

Before applying for a license to operate, prospective ambulance businesses must first apply for a Certificate of Need.  Once a person applies for such a Certificate, any existing Certificate-holder may protest that application on *any* basis—including the fact that the applicant would take away their business. KRS §§ 216B.040(2)(a)(2), 216B.085. As far as Plaintiffs know, not one protest has been filed for reasons related to an applicant's fitness to operate. *Id.* ¶ 27. All protests have been outright anti-competitive.

Once a protest is filed, the applicant is required to attend a hearing and prove to the Cabinet's satisfaction that his or her business is "needed." *Id.* Certificate of Need hearings resemble full-blown litigation. 900 KAR 6:090 § 3(11). Parties—including intervening Certificate-holders—may conduct discovery, provide legal briefing, offer evidence, and call witnesses. *Id.* §§ 3(7), 3(11). The financial interests of existing Certificate-holders are the Cabinet's primary consideration when determining whether an applicant's proposed business is "needed." R. 63 ¶¶ 5, 30–31, 37.

If a Certificate-holder protests, it not only increases the cost of getting a Certificate, it all but ensures that the applicant will be unsuccessful. *Id.* ¶¶ 32–37. In the ten years preceding September 2019, the Cabinet decided at least 24 applications to establish a new Class I ground ambulance services under its "formal review" procedure. *Id.* Eighteen of those 24 applications

were protested by an existing Certificate-holder. *Id.* The Cabinet granted all six of the unprotested applications. In nine of eighteen protested applications, the protesting businesses subsequently withdrew their protest after the applicant agreed to limit the scope of their service. *Id.* After the protests were withdrawn, the Cabinet granted the applications. *Id.* The Cabinet denied seven of the remaining nine protested applications. *Id.* In only two exceptional cases did the Cabinet grant an application over the protests of existing Certificate-holders. *Id.*[2] And even in those cases, the protest caused the applicants to expend significant time and resources proving they would not harm the existing providers' bottom line. *Id* ¶¶ 30-31.

Plaintiffs challenge the protest procedures and "need" requirements of the Certificate of Need program as unrelated to public health, safety, or any other legitimate government objective. They allege that it drives down supply, increases wait times, contributes to unnecessary deaths in Kentucky, and decreases the quality of care. Ultimately the Certificate program denies new businesses the opportunity to operate solely to protect incumbent providers from competition, which is per se illegitimate. *C.f. Bruner v. Zawacki*, 997 F. Supp. 2d 691, 700 (striking down Kentucky's Certificate program for moving companies because it achieved only illegitimate protectionism).

Even though this Court previously allowed Plaintiffs' dormant Commerce Clause claims to move forward and stated in its ruling on Plaintiffs' motion to amend that Plaintiffs' due process and equal protection claims were plausible, Defendants have once again moved to dismiss

---

[2] The two applications that were granted over an existing business's protest were based on exceptional facts. For instance, in one case, the protestant had been convicted of Medicare and Medicaid fraud and admitted returning an employee to work who had been criminally charged with abusing a patient even though the investigation into that incident had not been completed. He also admitted he might have to close his doors if sentenced to prison time. In the other, the applicant showed that a person had died waiting for an ambulance in Kentucky.

Plaintiffs' dormant Commerce Clause, due process, and equal protection claims for failure to state

claim under Federal Rule of Civil Procedure 12(b)(6). Defendants' motions should be denied with

respect to all claims except Plaintiff's Privileges or Immunities Claim.

## STANDARD OF REVIEW

On a motion to dismiss, courts must take all facts in the complaint as true, make all

reasonable inferences in favor of the plaintiffs, and determine whether the complaint states a

plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Courier v. Alcoa

Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009). A complaint should not be dismissed

if it alleges facts that, if taken as true, would "plausibly give rise to an entitlement to relief." *Doe

v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) ("If it is at all plausible (*beyond a wing and a prayer*)

that a plaintiff would succeed if he proved everything in his complaint, the case proceeds.")

(emphasis added). The Supreme Court has made clear that this "plausibility standard is not akin to

a 'probability requirement.'" *Iqbal*, 556 U.S. at 678.

Plaintiffs have plausibly alleged claims under the Due Process and Equal Protection

Clauses of the Fourteenth Amendment and dormant Commerce Clauses of the U.S. Constitution.

Defendants' motions must be denied.

## ARGUMENT

## I.   PLAINTIFFS HAVE PLAUSIBLY ALLEGED THAT THE CERTIFICATE PROGRAM VIOLATES THE FOURTEENTH AMENDMENT.

Plaintiffs' equal protection and due process claims are subject to the rational basis test,

which, at this stage, requires that plaintiffs plausibly allege that the challenged law is not rationally

related to any legitimate state interest. In its order granting Plaintiffs' Motion for Leave to Amend

the First Amended Complaint, this Court held that Plaintiffs' allegations "are sufficient to

constitute a plausible argument that the Certificate of Need law is not rationally related to a

legitimate government interest." R. 75 at 7. The Court stated that "Plaintiffs have provided enough facts to negate the conceivable bases proffered by the Government." *Id.* (specifically referring to Plaintiffs' allegations that the Certificate program "actually 'creates shortages, increases wait times and costs, decreases the quality of care, and causes deaths.'"). Just as this Court has already ruled that Plaintiffs' allegations are plausible, it should deny the present motions to dismiss on the same basis.

### A. The rational basis test allows plaintiffs to prove that a law is not rationally related to a legitimate government interest.

The Constitution protects the right to earn a living free from unreasonable government interference. *Lowe v. SEC*, 472 U.S. 181, 228 (1985). States may not restrict that right unless its regulations bear a rational connection to a legitimate government interest. *Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002). Moreover, the government may not discriminate between similarly situated parties unless its discriminatory treatment bears a rational connection to a legitimate state interest. *See, e.g., City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440 (1985).

As the Court acknowledges, this "rational basis" test is deferential, but it is not a judicial rubber stamp. R. 75 at 7; *see also Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 532 (6th Cir. 1998) ("Rational basis review, while deferential, is not 'toothless.'"). Rather, the test creates a presumption of constitutionality that plaintiffs may overcome with evidence demonstrating that the legislation lacks any rational connection to a legitimate purpose, affirmatively contradicts its purported ends, or serves only illegitimate ends. *See Heller v. Doe by Doe*, 509 U.S. 312, 321 (1993) ("even the standard of rationality as we so often defined it must find some footing in the realities of the subject addressed by the legislation"); *see also Merrifield v. Lockyer*, 547 F.3d 978, 991 (9th Cir. 2008) (refusing to uphold licensing legislation with "a rationale so weak that it undercuts the principle of non-contradiction"). Where a law bears no

6

connection to public health or safety and instead operates solely to protect established companies against new competition, it is an arbitrary deprivation of rights for the benefit of others and fails rational basis review. *Craigmiles*, 312 F.3d at 224 ("[P]rotecting a discrete interest group from economic competition is not a legitimate governmental purpose.")

Defendants suggest that the "inquiry under the rational basis test is *not* whether a law *in fact* accomplishes its stated purposes, but whether the legislature *could rationally have decided* that a challenged law might accomplish a legitimate government purpose." R. 78-1 at 7; *see also* R. 79-1 at 8. But the Supreme Court has explicitly rejected that standard.[3] In *U.S. Dep't of Agric. v. Moreno*, the Court struck down under rational basis review a law that excluded households of unrelated individuals from eligibility in the federal food stamp program. 413 U.S. 528, 529, 532–33 (1973). It ruled that even if Congress might "rationally have thought" that "households with one or more unrelated members are more likely than 'fully related' households" to commit fraud, the law still was not a "rational effort to deal with these concerns." *Id.* at 535. Thus, even under the rational basis test, plaintiffs can prove, through evidence, that there is no rational fit between a law and its stated ends. *See also Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 564 (1981) ("[P]arties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational."); *see also United States v. Carolene Prods.*, 304 U.S. 144, 152 (1938) (confirming that a law is presumed constitutional "unless, *in the light of facts made known* or generally assumed, it is of such a character as to preclude the assumption that it rests upon some rational basis") (emphasis added).

---

[3] Notably, such a standard would essentially insulate all economic regulations from constitutional challenge.

Several plaintiffs—including plaintiffs in the Supreme Court, Sixth Circuit, and this Court—have successfully challenged economic regulations where they lack a genuine means-end fit in practice or are otherwise irrational. *See City of Cleburne*, 473 U.S. at 440; *Zobel v. Williams*, 457 U.S. 55, 56 (1982); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973); *New State Ice Co. v. Liebmann*, 285 U.S. 262 (1932) (striking down CON law); *Golden v. City of Columbus*, 404 F.3d 950, 960–63 (6th Cir. 2005) (holding that ending a tenant's water service "is [not] a rational means of collecting the landlord's water service debt" and is "divorce[d] . . . entirely from the reality of legal accountability for the debt involved"); *Loesel v. City of Frankenmuth*, 692 F.3d 452, 465–66 (6th Cir. 2012); *Berger v. City of Mayfield Heights*, 154 F.3d 621 (6th Cir. 1998); *Craigmiles*, 312 F.3d 220; *Merrifield*, 547 F.3d at 991 n.15 ; *St. Joseph Abbey v. Castille*, 712 F.3d 215, 227 (5th Cir. 2013); *Bruner*, 997 F. Supp. 2d at 699 (invalidating Kentucky's requirement that moving companies demonstrate their services were "needed" before operating).

As the Court acknowledged in its recent Order, Plaintiffs' allegations, if true, demonstrate that the Kentucky Certificate program is irrational and furthers only the illegitimate end of protectionism and the claim should therefore move forward. R. 75 at 7.

### B. Plaintiffs plausibly alleged that the Certificate program's protest procedure and need requirement fail the rational basis standard.

As determined by this Court (R. 75 at 7), Plaintiffs plausibly alleged that the protest procedure and need requirement are not a rational means to achieve any legitimate government end. For instance, Plaintiffs have alleged that on its face, the Certificate program has nothing to do with a company's fitness to operate. In fact, it requires the Cabinet to deny even the most qualified applicants if they are unable to demonstrate "need." And the licensing scheme for ambulance providers (which is completely separate from the Certificate program and not challenged in this case) already ensures an applicant's fitness.

Moreover, Plaintiffs have alleged that the Certificate program results in shortages, longer wait times, and even death, and pointed to studies and specific instances bolstering these claims. R. 63 at ¶¶ 41–43, 51–52, 88. One study found that consumers in Louisville, Kentucky suffer wait times that are 3 minutes and 12 seconds longer than in nearby Nashville, Tennessee, which can be critical for emergency transportation. *Id.* ¶ 42. Another found that states that suspended their Certificate programs during the pandemic saved lives. *Id.* ¶ 44. And Plaintiffs allege that instead of making ambulance services more affordable, the Certificate program drives up prices by limiting providers to the number considered acceptable by incumbent businesses. *Id.* ¶¶ 43, 50. Plaintiffs have bolstered the plausibility of these allegations with a mountain of research and data showing that Certificate laws do not advance their goals and instead harm patients. *Id.* ¶¶ 40–44, 53 (citing numerous studies about the effects of Certificate programs, including government reports). These allegations, taken as true, show the Certificate program is counterproductive to the asserted aims of public health and safety and is therefore irrational. R. 75 at 7; *c.f. Bruner*, 997 F. Supp. 2d at 700 (striking down a moving service Certificate program because its protest and need requirements failed to rationally serve the asserted government objectives). Instead, it is an unconstitutional "Competitor's Veto" that allows incumbents to use the force of law to suppress competition. *Id.*

As this Court has already ruled, Defendants fail to assert any conceivable government interests that Plaintiffs have not already plausibly negated with their allegations (*see* R. 75 at 7), or that do not amount to simple protectionism. For example, Defendants assert that the Certificate program might improve healthcare quality, increase access, or create a cost-efficient healthcare system. R. 78-1 at 5, 6. They also say it ensures that low-reimbursement and charity care patients have access to transport. *Id.* Notably, on its face, the program bears no connection to this goal.

Allowing incumbents to stave off new competition on bases unrelated to health, safety, access, or cost-efficiency will not and cannot serve public health, safety, access, or cost-efficiency. And by definition, restricting market entrants means *fewer* available services and *less* access, not more. As the Fourth Circuit acknowledged, "[r]estricting market entry…necessarily limits the available services because it limits the number of [providers] from which a [customer] can seek service." *Medigen of Kentucky, Inc. v. Public Serv. Comm'n of West Virginia*, 985 F.2d 164, 167 (4th Cir. 1993). And as the First Circuit recognized, there is no rational reason to believe that a law prohibiting businesses from opening in one place would encourage them to open in unprofitable or geographically inconvenient locations. *See Walgreen Co. v. Rullan*, 405 F.3d 50, 59–60 (1st Cir. 2005) ("The refusal to grant a proposed [service] market entry at its desired location will not encourage the proposed [service] to relocate to an underserved area…"). Nevertheless, this argument is inappropriate at the motion to dismiss stage. Plaintiffs' allegations, which must be taken as true, state that the Certificate program *reduces* access to healthcare, decreases efficiency, increases costs, and lowers its quality. R. 63 at ¶¶ 41–43, 51–52, 88.[4]

Other justifications asserted by Defendants are protectionist on their face. For example, Defendant-Intervenor suggests that the Certificate program ensures that incumbents have "sufficient patient volumes" (in other words, the Certificate program creates a monopoly which artificially inflates incumbents' customer base) so they can "utilize economies of scale" (that is, so they can enjoy the increased profits that come from arbitrarily suppressing competition). They

---

[4]For their part, the Cabinet argues that Plaintiffs have not negated single conceivable basis for the Certificate Program, even though they refuse to articulate what any of these non-negated conceivable bases are apart from curbing "unnecessary" healthcare. R. 79-1. But Plaintiffs have alleged that the Certificate program's curbing of "unnecessary" healthcare services amounts to an illegitimate Competitor's Veto whereby incumbent businesses are empowered to decide what services are "unnecessary." R. 63 at ¶¶ 6, 30, 61, 82–83, 89, 99–100. They have therefore plausibly negated such a rationale.

10

speculate that Certificate-holders might eventually use these excess profits to invest in staff training and new equipment or lower their prices. R. 78-1 at 5. But this is exactly the sort of illegitimate protectionism that Plaintiffs allege in their complaint. R. 63 at ¶¶ 6, 30, 61, 82–83, 89, 99–100.

Moreover, Defendants' arguments defy common sense. There is no reason to believe that a Competitor's Veto scheme leads to greater efficiency or benevolent behavior, or that reducing competition will improve quality or reduce prices. *See Medigen*, 985 F.2d at 167 ("Restricting market entry does nothing to insure that services are provided at reasonable prices…higher rather than lower prices will more likely result from limiting competition."); *see also Bruner*, 997 F. Supp. 2d at 700 ("To the extent that the protest and hearing procedure prevents *excess entry* into the moving business, it does so *solely by protecting existing…companies*…against potential competition.") (emphasis added). And in fact, Plaintiffs have included studies bolstering their well-pleaded allegations that firms do *not* improve quality or reduce prices in the absence of competition. Defendants' asserted interest in a monopoly would justify *any* protectionist scheme, including the ones rejected in *Craigmiles* and *Bruner*. But as this Circuit and several others have held, economic protectionism is not a legitimate state interest. *See, e.g.*, *Craigmiles*, 312 F.3d at 229.

Plaintiffs believe, and in its recent Order, this Court agreed, that *Bruner* is "persuasive." R. 75 at 6. In *Bruner*, this Court held that a Certificate program for household moving companies failed the rational basis test and violated the Fourteenth Amendment. *Id.* at 700–01. As in this case, to obtain a Certificate, applicants had to comply with a protest procedure where they were forced to prove "need" and where incumbent businesses could block incoming competitors on any grounds—including on the basis that new businesses would impact the protestant's revenue. *Id.* The government posited a number of justifications such as protecting personal property, reducing

administrative costs, decreasing information asymmetry, and preventing "excess entry" into the industry. *Id.* at 700. The plaintiff was not only able to defeat a motion to dismiss but was also able to prove on the merits that the Certificate program did not achieve any of its purported purposes and was instead protectionist. *Id.*

Defendants assert that *Bruner* "bear[s] no resemblance to this case," R. 79-1 at 9; *see also* R. 78-1 at 10, but the regulatory scheme challenged in *Bruner* is nearly identical to the one challenged here.[5] And, as in *Bruner*, Plaintiffs' allegations negate all conceivable government justifications and leave no legitimate reasons for the Certificate program. R. 75 at 7. Plaintiffs have alleged that allowing incumbent businesses to effectively veto new competition on bases unrelated to health and safety will not lead to optimal supply, lower prices, or efficient allocation of services. Instead, it will cause shortages, increase costs, and create deadly wait times. *See Craigmiles*, 312 F.3d at 229 ("No sophisticated economic analysis is required to see the pretextual nature of the state's proffered explanations…"); *See also* R. 63 ¶¶ 41–43, 51–52, 88. This reality is reinforced by numerous studies and allegations in Plaintiffs' Complaint. *Id.* ¶¶ 40–44. Allowing existing moving *or* medical transport companies to protest the issuance of a Certificate in order to preserve their market share against potential competition is pure, illegitimate protectionism. *See id.* ¶ 46; *Bruner*, 997 F. Supp. 2d at 700–01; *see also Craigmiles*, 312 F.3d at 229 (recognizing the "General Assembly's naked attempt to raise a fortress protecting the monopoly rents that funeral directors extract from consumers.")

---

[5] Defendants lean heavily on *Tiwari et al. v. Friedlander et al.*, 2021 WL 1407953 (W.D. Ky. 2021)—a Certificate of Need challenge that survived a motion to dismiss but failed at summary judgment. Plaintiffs believe that *Bruner* provides a better analogy, both because the Certificate program in *Bruner* is more similar to the challenged program in this case and the opinion was issued in this Court, and because *Tiwari*, which is on appeal to the Sixth Circuit, incorrectly states the rational basis test.

At this stage, Plaintiffs need only present facts which, if taken as true, plausibly allege due process and equal protection violations. Here, Plaintiffs have pleaded allegations that state plausible claims for relief; thus, Defendants' motions to dismiss must fail. *See Tiwari v. Friedlander*, No. 3:19-cv-884-JRW-CHL, 2020 WL 4745772 (W.D. Ky. Aug. 14, 2020) (denying motion to dismiss due process challenge to law requiring home healthcare businesses to demonstrate "need"); *Bruner v. Zawacki*, No. 3:12-57-DCR, 2013 WL 684177 (E.D. Ky. Feb. 25, 2013) (denying motion to dismiss due process and equal protection challenge to law that required movers to demonstrate "need"); *Newell-Davis et al. v. Phillips et al.*, No. 21-49, 2021 WL 3286591 at \*9 (E.D. La. August 2, 2021) (denying motion to dismiss due process and equal protection challenge to law that requires providers of respite care to prove "need" before delivering services); *St. Joseph Abbey v. Castille*, No. 10-2717, 2011 WL 1361425 at \*9 (E.D. La. Apr. 8, 2011) (denying motion to dismiss due process and equal protection claims challenging license requirement for casket sales).

## II.   PLAINTIFFS HAVE PLAUSIBLY ALLEGED THAT THE CERTIFICATE OF NEED PROGRAM VIOLATES THE INTERSTATE COMMERCE CLAUSE.

On August 31, 2020, this Court issued an opinion denying the very arguments Defendants now assert require dismissal of Plaintiffs' Interstate Commerce Clause claim. R. 57 at 1, 11. Nothing has changed between then and now and Defendants' arguments must once again be denied.

### A.  The Certificate program unduly burdens interstate commerce.

Congress's authority to regulate interstate commerce has "long been understood [] to provide protection from state legislation inimical to the national commerce…" *Barclays Bank PLC v. Franchise Tax Bd.,* 512 U.S. 298, 310 (1994). There are two types of claims arising under this "dormant" aspect of the Commerce Clause: claims that 1) a law discriminates against out-of-state commerce on its face or in practical effect, or 2) that a law imposes an "undue burden" on interstate

commerce. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Plaintiffs allege a violation the second type of claim.

Under *Pike*, laws that are applied evenhandedly to local and interstate commerce are unconstitutional if they are clearly excessive in relation to the putative local benefits. *Department of Revenue of Kentucky v. Davis*, 553 U.S. 328, 338–39 (2008); *see also Eastern Ky. Resources v. Fiscal Court*, 127 F.3d 532, 540 (6th Cir. 1997). As this Court acknowledges, *Pike* requires a fact-intensive inquiry that "counsels against a premature dismissal." R. 57 at 10 *quoting Colon Health Ctrs. of Am.*, 733 F.3d 535, 546 (4th Cir. 2013); *see also Baude v. Health*, 538 F.3d 608, 612 (7th Cir. 2008) ("It is impossible to tell whether a burden on interstate commerce is clearly excessive in relation to the putative local benefits without understanding the magnitude of both burdens and benefits…").

Plaintiffs allege that the protest procedure and need requirement violate the *Pike* balancing test because the burden on interstate commerce outweighs the law's putative local benefits. Specifically, Plaintiffs allege that the law has two burdens on interstate commerce: first, it unduly burdens out-of-state providers who wish to provide transportation in Kentucky, and second, it unduly burdens all providers who wish to provide transportation between Kentucky and other states.[6] R. 63 at ¶ 78–80; s*ee also*, *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 37 (2009) (holding that Courts should focus on the "probable effect" of a law on interstate commerce). Those burdens are significant because the protest procedure substantially drives up the cost of applying for a Certificate and protested applications are almost always denied on the grounds that there is no "need" for competing services. *Id.* at ¶ 35–37. Finally, those burdens are not justified by any

---

[6] This extraterritorial effect alone may be enough to invalidate the law, because laws that regulate extraterritorial commerce are "virtually *per se* invalid under the dormant Commerce Clause." *Am. Beverage Ass'n v. Snyder*, 735 F.3d 362, 373 (6th Cir. 2013).

putative local benefit because they do not protect public health or safety and instead serve to protect incumbent businesses from competition. In fact, the resulting shortage of emergency ground transportation services has proved lethal to the people who have "died waiting for an ambulance." R. 63 at ¶ 41. Plaintiffs in other cases have repeatedly succeeded on the merits making similar Interstate Commerce Clause challenges to Certificate of Need programs. *See, e.g., Medigen of Kentucky, Inc. v. Public Serv. Comm'n of West Virginia*, 985 F.2d 164, 167 (4th Cir. 1993); *Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc.*, 401 F.3d 560, 573 (4th Cir. 2005); *Walgreen Co. v. Rullan*, 405 F.3d 50, 59 (1st Cir. 2005); *cf. New State Ice Co. v. Liebmann*, 285 U.S. 262, 274 (1932) (due process challenge to Certificate of Need law).

Defendants once again make the exact arguments this Court previously rejected. For example, they contend that Plaintiffs do not allege a significant impact on the interstate ambulance market.[7] R. 78-1 at 14; *see also* R. 79-1 at 12. But, as this Court previously recognized, that is simply false. R. 57 at 10. Plaintiffs explicitly allege that by requiring companies to obtain a Certificate before providing ground ambulance transportation within Kentucky, the law drastically reduces the number of providers and drives up the cost of operating, thereby burdening the

---

[7] Once again, Defendants' reliance on *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1978), a dormant Commerce Clause case decided on the merits and with the benefit of discovery, is misplaced. In *Exxon*, an oil refiner argued that a Maryland law prohibiting oil producers or refiners from operating retail service stations unduly burdened interstate commerce because at least three refiners indicated they would stop selling oil in Maryland. After considering the evidence obtained during discovery, the Supreme Court ruled that though the law burdened a particular business model, it was likely that the interstate market would still thrive because other out-of-state companies, with a different business model, would continue to operate in Maryland and would thus perpetuate a robust interstate market in oil. That is not the case here. Kentucky's Certificate of Need program does not merely shift operations from one business model to another, or from one interstate provider to another. Plaintiffs allege that the law shuts out nearly every out-of-state provider that applies. And even when companies have been able to secure a Certificate despite a protest, it has only been after either narrowing the scope of their territory or submitting to the expensive and onerous hearing procedure.

interstate market for these services. R. 63 ¶ 78–81. Moreover, the program reduces the number of providers who provide transportation between Kentucky and other states, thereby directly burdening interstate commerce. R. 63 at ¶¶ 78–81.

### B.  The Certificate program serves no legitimate government purpose.

Plaintiffs allege that the Certificate program provides *no* putative local benefits. R. 63 at ¶¶ 69, 81–82. Only incumbent businesses, not members of the public, take advantage of the protest procedure and they do so solely for the purpose of staving off new competition. *Id.* ¶¶ 22–23, 26. The program therefore results in a Competitor's Veto that excludes otherwise qualified applicants to the detriment of Kentucky consumers. *Id.* ¶¶ 42–45. Protecting the profits of entrenched Certificate-holders at the expense of public health is *not* a legitimate local interest. *Craigmiles*, 312 F.3d at 229; *City of Philadelphia v. N.J.*, 437 U.S. 617, 624 (1978) ("Where simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected.").

Any interests the Defendants assert are negated by Plaintiffs' well-pleaded allegations. R. 57 at 7. As discussed in Part I(B) above, the purported local benefits of the Certificate program are either illogical speculation that is contradicted by the allegations in Plaintiffs' Complaint or undisguised protectionism. Plaintiffs' allegations show that the Certificate program results in worse health outcomes for Kentucky patients and is designed to protect existing business from competition. R. 57 at 9; s*ee also Medigen*, 985 F.2d at 167 (explaining in the context of a Certificate program that purely "speculative" benefits on behalf of the government will not suffice). But even if a legitimate local purpose is ultimately revealed, the "extent of the burden that will be tolerated will…depend on the nature of the local interest involved…and whether it could be promoted as well with a lesser impact on interstate activities." R. 57 at 10 (quoting *Pike*, 397 U.S. at 142). This naturally fact-intensive balance is why the Court declined to "forecast what further

investigation may demonstrate." R. 57 at 10 (quoting *Colon Health Ctrs*, 733 F.3d at 546). It should do so again here.

As this Court has previously ruled, Plaintiffs' allegations state a plausible claim that the Certificate program unduly burdens interstate commerce without providing any legitimate local benefits. That is all that is required to defeat a 12(b)(6) motion to dismiss. For that reason, this Court should deny Defendants' motions.

Dated: September 28, 2021.

Respectfully submitted,

BILLINGS LAW FIRM, PLLC                   PACIFIC LEGAL FOUNDATION
JOHN N. BILLINGS
Email: nbillings@blfky.com                /s/ Anastasia P. Boden
145 Constitution Street                   ANASTASIA P. BODEN, Cal. Bar No. 281911*
Lexington, Kentucky 40507                 Email: ABoden@pacificlegal.org
Telephone: (859) 225-5240                 JOSHUA POLK, Cal. Bar No. 329205*
Facsimile: (859) 225-5241                 Email: JPolk@pacificlegal.org
                                          930 G Street
                                          Sacramento, California 95814
                                          Telephone: (916) 419-7111
                                          Facsimile: (916) 419-7747

                                          *pro hac vice

*Counsel for Plaintiffs Phillip Truesdell and Legacy Medical Transport, LLC*

17

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copies of the foregoing was served by electronic service through the Court's CM/ECF system on September 28, 2021, upon the following:

David T. Lovely
Commonwealth of Kentucky
Cabinet for Health and Family Services
275 E. Main Street 5W-B
Frankfort, KY 40621
*Attorney for Defendants*
*Eric Friedlander, in his official capacity*

Matthew R. Klein
Mark D. Guilfoyle
David M. Dirr
Dressman Benzinger Lavelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017-2596
*Attorneys for Defendant-Intervenor*
*Patient Transport Services*

/s/ Anastasia P. Boden
ANASTASIA P. BODEN, Cal. Bar No. 281911*
*pro hac vice*

*Counsel for Plaintiffs Phillip Truesdell*
*and Legacy Medical Transport, LLC*