UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

PHILLIP TRUESDELL, *et al.*,          )
                                       )
           Plaintiffs,                 )          Civil No. 3:19-cv-00066-GFVT-EBA
                                       )
                                       )
v.                                     )
                                       )          **MEMORANDUM OPINION**
                                       )          **&**
SECRETARY ERIC FRIEDLANDER., *et*      )          **ORDER**
*al.*,                                 )
                                       )
           Defendants.                 )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Defendants' Motions to Dismiss the Plaintiffs'

Second Amended Complaint.  [R. 78; R. 79.]  For the reasons that follow, the Motions to

Dismiss will be GRANTED IN PART and DENIED IN PART.

**I**

Plaintiff Phillip Truesdell is the owner of Plaintiff Legacy Medical Transport, LLC,[1]

which is a "ground ambulance business" located in Ohio approximately one mile from the

Kentucky border.  [R. 63 at 2.]  Legacy has operated in Ohio since 2017, and the company owns

seven ambulances that make between 1,500 and 2,000 trips annually.  *Id.* at 12.  Given Legacy's

close proximity to Kentucky, the company wishes to provide Class I[2] non-emergency ground

medical transport from Kentucky to Ohio and to make intrastate trips within Kentucky.  *Id.* at 2.

---

[1] Because Mr. Truesdell is the sole owner of Legacy Medical Transport, LLC, Plaintiffs collectively will be referred to as Legacy.

[2] A Class I ground ambulance provider is a company that provides "basic life support or advanced life support services to all patients for emergencies or scheduled ambulance transportation which his medically necessary." KRS § 311A.030.

However, Kentucky law requires Legacy to obtain a Certificate of Need before it can transport a Kentucky resident from a Kentucky facility to a facility located outside the state or make intrastate trips within Kentucky. [*Id.*; *see also* R. 78-1 at 13.]

In 2018, Legacy applied to the Cabinet for Health and Family Services for a Certificate to operate a Class I ambulance service in Kentucky. [R. 63 at 12.] Certificate-holding ambulance companies protested Legacy's application, which necessitated a hearing.[3] *Id.* At the hearing, certificate-holding companies asked questions "related to whether allowing [Legacy] to operate in Kentucky would 'harm' the existing businesses," specifically inquiring about "whether [Legacy] knew how many customers or how much money they would take away from the existing businesses." *Id.* at 12–13. Ultimately, the Cabinet denied Legacy's Certificate of Need application, at least in part, "because the Cabinet determined they could not prove there was a 'need' for a new business." *Id.* at 13.

On September 24, 2019, Legacy filed the Complaint in this matter, arguing that Kentucky's Certificate of Need regulations violated the dormant Commerce Clause, Due Process Clause, Equal Protection Clause, and the Privileges or Immunities Clause of the Fourteenth Amendment. [R. 1 at 11–14.] Legacy is not challenging its application denial or seeking money damages. [R. 63 at 3, 13.] Instead, Legacy is seeking prospective declaratory and injunctive relief. *Id.* at 13, 19–20. On October 29, 2019, the Defendants filed their first Motion to Dismiss. [R. 16.] In response, Legacy amended its Complaint on November 19, which mooted Defendants' Motion to Dismiss. [R. 17; *see also* R. 57 at 18.] Defendants filed their second Motion to Dismiss on January 17, 2020. [R. 33.] On February 5, the Court granted Patient

---

[3] After a business applies for a Certificate of Need, any "affected person," often a competitor, can protest the business's application and request a hearing. KRS §§ 216B.040; 216B.085. At the hearing, the business must demonstrate that its services are needed. KRS § 216B.040; 900 KAR 6:090 § 3.

Transport Services, Inc.'s Motion to Intervene, and Patient Transport Services filed a Motion to Dismiss the same day. [R. 34; R. 36.]

On August 5, 2020, the Court denied the Defendants' Motions to Dismiss as to the dormant Commerce Clause claim and granted the motion as to Legacy's Due Process, Equal Protection, and Privileges and Immunities claims. [R. 57 at 18.] On September 30, 2020, Legacy filed a Motion to Amend the First Amended Complaint, which the Court granted on August 24, 2021. [R. 62; R. 74.] On September 7, 2021, Defendants filed the Motions to Dismiss presently before the Court. [R. 78; R. 79.]

## II

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009).

## A

Defendants seek dismissal of Legacy's Due Process Clause claim. [R. 78-1 at 4; R. 79-1 at 5.] The Complaint alleges that the Plaintiffs' liberty interest in pursuing their chosen

3

occupation is offended by the statutory scheme because the Certificate of Need protest procedure

and need requirement act as a "Competitor's Veto." [R. 63 at 16.] Furthermore, the Complaint

alleges that the protest procedure and need requirement constitute nothing more than economic

protectionism and create "shortages, jeopardize public health and safety, and increase costs." *Id.*

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing]

any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

The Fourteenth Amendment "prohibits the government from imposing impermissible substantive

restrictions on individual liberty," for example, a liberty interest to engage in a chosen

occupation. *Craigmiles v. Giles*, 110 F. Supp. 2d 658, 661 (E.D. Tenn. 2000) (citing *Washington*

*v. Glucksberg*, 521 U.S. 702, 720–21 (1994), *aff'd*, 312 F.3d 220 (6th Cir. 2002); *see also Conn*

*v. Gabbert*, 526 U.S. 286, 291–92 (1999) (recognizing that "the liberty component of the

Fourteenth Amendment's Due Process Clause includes some generalized due process right to

choose one's field of private employment, but a right which is nevertheless subject to reasonable

government regulation"). "Generally speaking, freedom to choose and pursue a career, to

engage in any of the common occupations of life, qualifies as a liberty interest which may not be

arbitrarily denied by the State." *Wilkerson v. Johnson*, 699 F.2d 325, 328 (6th Cir. 1983) (citing

*Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). Such legislation "violates the Due Process

Clause where it imposes burdens without any rational basis for doing so." *Sheffield v. City of*

*Fort Thomas, Ky.*, 620 F.3d 596, 613 (6th Cir. 2010) (quoting *United States v. Comstock*, 560

U.S. 126, 151 (2010) (Kennedy, J., concurring) (internal quotation marks omitted)). Thus,

legislation regulating a profession or trade carries "a presumption of legislative validity, and the

burden is on [the challenger] to show that there is no rational connection between the enactment

and a legitimate government interest." *Am. Exp. Travel Related Servs. Co., Inc. v. Ky.*, 641 F.3d

685, 689 (6th Cir. 2011) (quoting *Sheffield*, 620 F.3d at 613) (alteration in original).

Here, the parties agree that Kentucky's Certificate of Need laws and regulations are subject to rational basis review.  [R. 63 at 17; R. 78-1 at 4; R. 79-1 at 5.]  Rational basis is "highly deferential," and statutes fail under this standard of review "only in rare or exceptional circumstances." *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007).  In cases of this sort, "regulatory legislation affecting ordinary commercial transactions is not to be pronounced unconstitutional unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators." *Am. Exp. Travel Related Servs.*, 641 F.3d at 689 (quoting *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 (1938)).  "[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).  In fact, the Supreme Court has explained that under the rational basis standard of review, the reasoning supporting the state's legislative action is "constitutionally irrelevant." *R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (quoting *Flemming v. Nestor*, 363 U.S. 603, 612 (1960)).  The Court will uphold the statute or regulation "if there is any reasonably conceivable state of facts that could provide a rational basis." *Walker v. Bain*, 257 F.3d 660, 668 (6th Cir. 2001) (quoting *Heller v. Doe*, 509 U.S. 312, 319–20 (1993)).

In August 2020, this Court held that Legacy's Amended Complaint failed to state a plausible substantive due process claim.  [R. 57 at 13.]  Taking a cue from the Fourth Circuit in *Colon Health Ctrs. of Am., LLC v. Hazel*, 733 F.3d 535, 548 (4th Cir. 2013), this Court "decline[d] to delve into the specific rational bases that support the public hearing provision and need criterion," finding that disagreement as to Kentucky's Certificate of Need process was a

5

matter more appropriately suited for resolution by the legislature.  *Id.* at 14.  Legacy was given

the opportunity to amend its Amended Complaint, however, after the Court found that Legacy's

proposed amendment was not futile, meaning it "could withstand a Rule 12(b)(6) motion to

dismiss."  [R. 75 at 4 (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir.

2000).]  The Court reached this conclusion because the Second Amended Complaint contained

significantly more information about the Certificate of Need program's fail to meet its own

goals.  [*See, e.g.*, R. 63 at 8–11.]

KRS § 216B.010 provides that the Purpose of the Certificate of Need program is to

"improve the quality and increase access to health-care facilities, services, and providers, and to

create a cost-efficient health-care delivery system for the citizens of the Commonwealth."

However, the Second Amended Complaint alleges that the program does not satisfy the rational-

basis test because it "fails to achieve any of its goals."  [R. 63 at 9.]  This claim is supported by

the following allegations:

- Kentucky's Certificate of Need program has "resulted in a shortage of ambulance providers and higher wait times than states without such a program" and has resulted in the deaths of Kentucky residents;[4]
- Kentucky has 25% fewer providers than its neighboring states;
- Certificate of Need laws drive up medical costs by "artificially limiting the supply of medical providers;"
- States with Certificates of Need have higher mortality rates and a lower quality of care than non-Certificate of Need states;
- In response to Covid-19, "states that suspended or modified their [Certificate of Need] laws saved lives compared to states that did not;"
- Certificate of Need programs are not justifiable in the context of ground ambulance transportation; and
- The Certificate of Need program operates as an economic protectionist regime.

*Id.* at 8–10.  Furthermore, Legacy alleges in the Second Amended Complaint that although

---

[4] In a footnote, Legacy avers that one Certificate of Need application was granted to a Class I ambulatory service because the applicant "presented evidence that ambulance wait times likely contributed to a Kentucky resident's death."  [R. 63 at 8 n.6.]  No other facts in the Second Amended Complaint support Legacy's allegation that Kentucky residents have died waiting for an ambulance.

6

Congress required states to implement Certificate of Need programs to receive certain federal

funding in the 1970s, Congress repealed the Certificate of Need requirement in 1986 because the

Certificate of Need programs were failing to achieve their stated goals. *Id.* at 10–11. In 2004,

the Federal Trade Commission and Department of Justice issued a joint report condemning

Certificate of Need programs and asking states to consider scrapping their Certificate of Need

programs altogether. *Id.* at 11. Based on these additional allegations, the Court granted

Legacy's Motion to Amend its Amended Complaint.[5]

However, during the pendency of this matter, the Sixth Circuit provided clarity on the

Constitutionality of Kentucky's Certificate of Need program in a similar case originating in the

Western District of Kentucky. *Tiwari v. Friedlander*, 26 F.4th 355 (6th Cir. 2022).[6] In *Tiwari*,

Dipendra Tiwari and Kishor Sapkota submitted an application to establish a home healthcare

company called Grace Home Care "that would focus on serving Nepali-speaking individuals in

the Louisville area." *Id.* at 358. The application, submitted in March 2018, was ultimately

denied.[7] *Id.* at 359. Grace Home Care filed suit in federal court alleging that the Certificate of

Need law, as applied to home healthcare companies, violated the Due Process, Equal Protection,

and Privileges or Immunities Clauses of the Fourteenth Amendment. *Id.* The defendants filed

12(b)(6) motions to dismiss, which were denied "in a thoughtful and thorough opinion" as to the

---

[5] The Court's decision to permit Legacy to amend its Complaint is bolstered by the fact that Judge Justin Walker in the Western District of Kentucky denied motions to dismiss plaintiff's equal protection and due process claims in a case based on similar facts to those alleged in Legacy's Second Amended Complaint. *Tiwari v. Friedlander*, 2020 WL 4745772 (W.D. Ky. Aug. 14, 2020).

[6] As the Defendants point out, the exact Certificate of Need program (KRS Chapter 216B) at issue in *Tiwari* is at issue in this case. [R. 83 at 7.] The only difference is that *Tiwari* involved the Certificate of Need program's application to home healthcare companies and this case involves the Certificate of Need program's application to ground ambulance companies. [R. 84 at 6.]

[7] The plaintiffs in *Tiwari* do not focus on the process of their Certificate of Need denial, focusing instead on "the substance of Kentucky's certificate-of-need law" and claiming that the law "violates the liberty guarantee of the Due Process Clause." *Tiwari*, 26 F.4th at 360. Similarly, in this case, Legacy does not "challenge the license requirement, or any other health or safety regulations that pertain to medical transport." [R. 63 at 5.] Instead, Legacy argues only that the protest procedure and need requirement "deprive them of the liberty of pursuing their chosen trade without serving any legitimate governmental interest." *Id.* at 14.

Due Process and Equal Protection Clauses and granted as to the Privileges or Immunities Clause. *Id.* at 360. In denying the motions to dismiss, the district court homed in on research and data indicating that Certificate of Need laws increase costs, limit access to home health care, and decrease the quality of care, in addition to "protect[ing] the pockets of rent-seeking incumbents at the expense of entrepreneurs who want to innovate and patients who want better home health care." *Tiwari*, 2020 WL 4745772, at *8–11, 14.

At the summary judgment stage, the district court granted summary judgment, finding that "the State's justifications for the law rationally supported it." *Tiwari*, 26 F.4th at 360 (citing *Tiwari*, 2021 WL 1407953, at *13). The Sixth Circuit affirmed, addressing the Certificate of Need law's interaction with the Due Process and Equal Protection Clauses in detail. The Court held that "rational-basis review epitomizes a light judicial touch." *Id.* at 362. The Sixth Circuit analyzed several laws and programs that failed rational-basis review, finding that all of them "involved situations in which the law failed to serve a legitimate end or the law in application did not have a rational connection to its purpose." *Id.* at 362–63. As for Kentucky's Certificate of Need law, the Court held that it passed the rational-basis test "perhaps with a low grade but with a pass all the same." *Id.* at 363. In fact, the Court found that "[n]o court to our knowledge has invalidated a healthcare certificate-of-need law under the rational-basis requirements of the Fourteenth Amendment." *Id.* at 364. The Sixth Circuit found that a rational connection existed between the State's legitimate goal of furthering healthcare in Kentucky and its "avowed means" of "increasing cost efficiency, improving quality of care, and improving the healthcare infrastructure in place." *Id.* at 363–64.

In the Second Amended Complaint, Legacy alleges that Kentucky's Certificate of Need program has failed to lower costs or improve the level of care, operates as a protectionist regime,

and has been disavowed in numerous studies and even by the federal government. [R. 63 at 8–10.] However, each of the new allegations contained in Legacy's Second Amended Complaint was addressed in detail in *Tiwari*, which binds this Court. Furthermore, this case involves the precise Certificate of Need program as the one at issue in *Tiwari* and is just as applicable to the ambulance company context as the healthcare company context,[8] particularly given the allegations raised by Legacy in this case.

Legacy argues that the Certificate of Need program has failed to lower costs or improve the level of care. However, "[t]he problem for [Legacy] is that this is not the inquiry. 'The Constitution does not prohibit legislatures from enacting stupid laws.'" *Tiwari*, 26 F.4th at 365 (quoting *N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 209 (2008)). Furthermore, the Due Process Clause does not contain a cost-benefit component. *Id.* Ultimately, the weighing of costs and benefits "in the face of competing costs is eminently a legislative task, not a judicial one." *Id.* at 366. To the extent Legacy argues that Kentucky has fewer ambulances than surrounding states and that some states have modified or suspended their Certificate of Need programs because of the Covid-19 pandemic, these post hoc considerations are irrelevant because the rational-basis inquiry focuses on whether the enacting legislators had a plausible reason for passing the law. *Heller*, 509 U.S. at 324.

Although Legacy points to studies and evidence that Certificate of Need laws increase healthcare costs and lower the quality of care, the Court in *Tiwari* found that "the possibility of changed circumstances doesn't change...the modest nature of the rational-basis inquiry." *Id.* at 367. For example, lawmakers could rationally have thought that the Certificate of Need law would create cost efficiency for providers, which would then "benefit the public down the road."

---

[8] Home health agencies, like the one at issue in *Tiwari*, and ambulance providers are both included within the 216B.015 definition of "health facility" for the Certificate of Need program.

9

*Id.* Defendants also argue that the Certificate of Need program "furthers the governmental interest of curbing unnecessary healthcare services." [R. 79-1 at 10.] As for Legacy's arguments that Kentucky's Certificate of Need program has ultimately resulted in ambulance shortages, higher wait times, and is not justifiable, Defendants state that it was rational for the General Assembly to view the Certificate of Need program as a way to "reduce the likelihood that costly ambulances, equipment, and facilities would be underused, and thus the cost-efficiency of EMS services would be improved." [R. 78-1 at 5.] The Court finds that the arguments proffered by the Defendants constitute rational bases on which the lawmakers could reasonably have relied upon in enacting the Certificate of Need program.

Finally, it is true that a law serving exclusively protectionist ends will fail rational-basis review. *See Craigmiles v. Giles*, 312 F.3d 220, 229 (6th Cir. 2002). However, to the extent Legacy argues that the Certificate of Need law is a protectionist regime that "favors incumbents over new entrants," the Sixth Circuit found that "[p]rotectionist though this law may be in some of its effects, that is not the only effect it has or the only goal it serves." *Id.* at 368. Ultimately, the Sixth Circuit denied Legacy's precise argument in *Tiwari*, concluding that Kentucky has demonstrated that its Certificate of Need regulations "advance a legitimate cause." 26 F.4th at 368. Therefore, the Court will grant the Defendants' Motions to Dismiss as to Legacy's due process claim.

## B

Defendants also seek dismissal of Legacy's equal protection claim. [R. 78-1 at 4; R. 79-1 at 5.] The Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The purpose of the Fourteenth Amendment is "to secure every person within the state's jurisdiction against

intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sadie v. City of Cleveland*, 718 F.3d 596, 602 (6th Cir. 2013) (quoting *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441, 445 (1923)). "The basis of any equal protection claim is that the state has treated similarly-situated individuals differently." *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F. 2d 1031, 1036 (6th Cir. 1992).

Here, Legacy argues that the Certificate of Need requirement "draws an arbitrary and irrational distinction" between ground ambulance companies who are permitted to provide transportation in the Commonwealth and those who cannot. [R. 63 at 17.] Legacy argues that the company is as qualified to operate in Kentucky as any ground ambulance originating in Kentucky that possesses a Certificate of Need and that the "protest procedure and 'need' requirement bear no rational relationship to protecting public health or safety." *Id.* Legacy argues the protest procedure and need requirement are protectionist. *Id.*

The Court previously granted dismissal of Legacy's equal protection claim but permitted Legacy to amend its Amended Complaint. [R. 57 at 17; R. 75 at 7.] The Second Amended Complaint did not add any allegations to Legacy's specific Equal Protection claim, relying instead on the same additional allegations about the Certificate of Need program's shortcomings discussed *supra*. For many of the same reasons discussed in the due process context, the Certificate of Need program provisions survive rational basis scrutiny. *See Tiwari*, 26 F.4th at 368. "So long as the Commonwealth has not drawn categories 'along suspect lines,' its classifications will survive scrutiny 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* (quoting *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012)).

11

Here, the Kentucky General Assembly has articulated that the Certificate of Need program was enacted to advance the provision of safe, efficient, and quality health care. KRS § 216B.010. Defendants add that the Certificate of Need program "furthers the governmental interest of curbing unnecessary healthcare services." [R. 79-1 at 10.] Furthermore, Defendants state that the General Assembly rationally viewed the Certificate of Need program as a way to "reduce the likelihood that costly ambulances, equipment, and facilities would be underused, and thus the cost-efficiency of EMS services would be improved." [R. 78-1 at 5.] As discussed *supra*, studies questioning the efficacy of Certificate of Need programs after their enactment are not relevant to the rational basis inquiry. Ultimately, while Legacy may have drawn a different line than the one drawn by the General Assembly, "that consideration is one for the legislature, not the judiciary to make." *Twari*, 26 F.4th at 370 (citing *U.S. R.R. Ret. Bd. V. Fritz*, 449 U.S. 166, 179 (1980)). Accordingly, the Court will grant the Defendants' Motions to Dismiss as to Legacy's equal protection claim.[9]

C

Defendants next seek dismissal of Legacy's dormant Commerce Clause claim. [R. 78-1 at 12; R. 79-1 at 10.] The Commerce Clause of the United States Constitution endows Congress with the power to "regulate commerce with foreign Nations, and among the several States, and with the Indian tribes[.]" Art. I, § 8, cl. 3. Inherent in this grant of power to Congress is a limitation placed upon the states. "Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been

---

[9] The Court acknowledges that a district court in Mississippi recently concluded, based on a review of the Complaint, that the state's Certificate of Need laws and moratoria did not rationally relate to any legitimate state interests. *Slaughter v. Dobbs*, --- F. Supp. 3d ----, 2022 WL 135424, at *5–6 (S.D. Miss. Jan. 13, 2022). However, Mississippi's Certificate of Need law was quite different from Kentucky's. In fact, "Mississippi's restriction, it deserves note, ventured beyond Kentucky's, banning *all* new entry into the market for the last several decades regardless of any 'need' for the services." *Tiwari*, 26 F.4th at 369.

12

recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 644 (6th Cir. 2010) (quoting *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984)). "This self-executing limitation is often referred to as the 'negative' or 'dormant' aspect to the Commerce Clause." *E. Ky. Res. v. Fiscal Court*, 127 F.3d 532, 539–40 (6th Cir. 1997) (citing *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175 (1995)). The dormant Commerce Clause prohibits states from enacting statutes or regulations aimed at economic protectionism that are "designed to benefit in-state economic actors by burdening out-of-state actors." *Id.* at 540. The standard for evaluating alleged violations of the dormant Commerce Clause is two-tiered. *Id.* "The first step involves determining whether the statute directly burdens interstate commerce or discriminates against out-of-state interests." *Id.* If the challenged law is not discriminatory the court must still proceed to the second step and find the law is valid "unless the burdens on interstate commerce are 'clearly excessive in relation to the putative local benefits.'" *Id.* (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)); *see also Tennessee Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 449 (6th Cir. 2009).

Because Kentucky's Certificate of Need laws indisputably treat in-state and out-of-state applicants the same, Legacy alleges the second type of claim, which is that Kentucky's Certificate of Need laws put an "undue burden" on interstate commerce. [R. 63 at 15–16.] Even laws that are applied evenhandedly and impose only an incidental burden on interstate commerce are unconstitutional if the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits. *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338–39 (2008) (citing *Pike v. Bruce Church*, 397 U.S. 137, 142 (1970)). The putative benefits of a challenged law are evaluated under the rational basis test, though "speculative" benefits will not pass

13

muster.  *Medigen of Ky., Inc. v. Pub. Serv. Comm'n*, 985 F.2d 164, 167 (4th Cir. 1993).  The

*Pike* test requires close examination because courts must assess a statute's burdens, particularly

when the burdens fall primarily on out-of-state interests.  *Yamaha Motor Corp. v. Jim's*

*Motorcycle, Inc.*, 401 F.3d 560, 569 (4th Cir. 2005).  The test is therefore deferential but not

toothless.  *See Davis*, 553 U.S. at 339.

In their Second Amended Complaint, Legacy alleges that Kentucky's Certificate of Need

program substantially burdens the interstate market for ground ambulance services.  [R. 63 at

15.]  Plaintiffs specifically state that "Kentucky's Certificate requirement prevents out-of-state

ground ambulance providers like Plaintiffs from offering trips in Kentucky without undertaking

the costly, burdensome, and unconstitutional process of applying for and receiving a Certificate."

*Id.*

The Court previously found that Legacy's Amended Complaint "present[ed] issues of

fact that cannot be properly resolved on a motion to dismiss," and denied the Defendants'

Motions to Dismiss as to the dormant Commerce Clause claim.  [R. 57 at 11.]  Legacy's Second

Amended Complaint is identical as to the dormant Commerce Clause claim, and Defendants'

arguments in their latest Motions to Dismiss are in large part copy and paste versions of

arguments that the Court previously rejected.  [*Compare* R. 33-1 at 10–15 *with* R. 79-1 at 10–14;

*and* R. 36 at 12 *with* R. 78-1 at 13.]  Defendants have failed to raise new issues that would

prompt the Court to revisit its previous ruling at this stage in the litigation.  Furthermore, "[t]he

fact-intensive character of" the *Pike* balancing test "counsels against a premature dismissal."  [R.

57 at 11 (citing *Colon Health Ctrs. of Am.*, 733 F.3d at 546).]  Therefore, the Court will permit

Legacy's dormant Commerce Clause claim to proceed.

14

**D**

Finally, Kentucky's Certificate of Need laws do not violate the Privileges or Immunities Clause.  As the Court previously stated, the Supreme Court's *Slaughter-House Cases*, 83 U.S. U.S. 36 (1873), foreclose Legacy's Privileges or Immunities claim.  [R. 57 at 18; *see also Tiwari*, 26 F.4th at 370.]  Therefore, the Court will grant the Defendants' Motions to Dismiss as to the Privileges or Immunities Clause claim.

**III**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that the Defendants' Motions to Dismiss **[R. 78; R. 79]** are **GRANTED** as to the Due Process, Equal Protection, and Privileges or Immunities claims and **DENIED** as to the dormant Commerce Clause claim.

This the 2d day of May, 2022.

Gregory F. Van Tatenhove
United States District Judge