UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

PHILLIP TRUESDELL, *et al.*,                )
                                            )
         Plaintiffs,                        )
                                            )      Civil No. 3:19-cv-00066-GFVT
v.                                          )
                                            )
ERIC FRIEDLANDER, *et al.*,                 )      **MEMORANDUM OPINION**
                                            )               **&**
         Defendants.                        )      **ORDER**
                                            )
                                            )

                            ***  ***  ***  ***

        This matter is before the Court on the parties' cross-motions for summary judgment.  [R.

98; R. 105; R. 107.]  For the reasons set forth herein, Plaintiff Legacy Medical Transport, LLC's

motion for summary judgment [R. 105] will be DENIED, Defendant Eric Friedlander's motion

for summary judgment as to subject matter jurisdiction [R. 98] will be DENIED, and Secretary

Friedlander's motion for summary judgment as to the dormant Commerce Clause [R. 107] will

be GRANTED.[1]

                                            **I**

        Plaintiff Phillip Truesdell is the owner of Plaintiff Legacy Medical Transport, LLC,

which is a "ground ambulance business" located in Ohio approximately one mile from the

Kentucky border.  [R. 63 at 2.]  The Court's May 2, 2022, Memorandum Opinion and Order

---

[1] The Defendants in this matter include Eric Friedlander, Secretary of the Kentucky Cabinet for Health and Family
Services, Adam Mather, Inspector General for the Kentucky Cabinet for Health and Family Services, Carrie
Banahan, Deputy Secretary of the Kentucky Cabinet for Health and Family Services, and Intervenor Defendant First
Care Ohio, LLC.  The Cabinet officials are being sued in their official capacities pursuant to *Ex parte Young*, 209
U.S. 123 (1908).  Defendants collectively will be referred to as "Secretary Friedlander."  Because Mr. Truesdell is
the sole owner of Legacy Medical Transport, LLC, Plaintiffs collectively will be referred to as "Legacy."

provided the factual background of this case, and the Court will therefore only provide the facts and procedural history necessary to address the present motions.

On September 24, 2019, Legacy filed the Complaint in this matter and argued that Kentucky's Certificate of Need (CON) regulations, specifically the protest procedure and need requirement, violated the dormant Commerce Clause, Due Process Clause, Equal Protection Clause, and the Privileges or Immunities Clause of the Fourteenth Amendment. [R. 1 at 11–14.] As the Court has addressed in previous orders, the need requirement and protest procedure are two components of the Certificate of Need application process for a business to operate ground ambulance services in Kentucky. Legacy is not contesting any other aspects of the certification process in this litigation.

Under the need requirement, a "proposal shall meet an identified need in a defined geographic area and be accessible to all residents of the area." KRS 216B.040(2)(a). The protest procedure allows "Affected Persons" to request a hearing on a CON application and to present evidence for the hearing officer at the public hearing to consider. KRS 216B.085; 900 KAR 6:090, Sec. 3. "Affected persons" include:

> the applicant; any person residing within the geographic area served or to be served by the applicant; any person who regularly uses health facilities within that geographic area; health facilities located in the health service area in which the project is proposed to be located which provide services similar to the services of the facility under review; health facilities which, prior to receipt by the agency of the proposal being reviewed, have formally indicated an intention to provide similar services in the future; and the cabinet and third-party payors who reimburse health facilities for services in the health service area in which the project is proposed to be located.

KRS 216B.015.

Legacy is not challenging the denial of its Certificate of Need or seeking money damages. [R. 63 at 3, 13.] Instead, Legacy is seeking prospective declaratory and injunctive

relief.  *Id.* at 13, 19–20.  On October 29, 2019, Secretary Friedlander filed his first Motion to

Dismiss.  [R. 16.]  In response, Legacy amended its Complaint on November 19, which mooted

Secretary Friedlander's Motion to Dismiss.  [R. 17; *see also* R. 57 at 18.]  Secretary Friedlander

filed his second Motion to Dismiss on January 17, 2020.  [R. 33.]  On February 5, the Court

granted Patient Transport Services, Inc.'s Motion to Intervene, and Patient Transport Services

filed a Motion to Dismiss the same day.[2]  [R. 34; R. 36.]

On August 5, 2020, the Court denied Secretary Friedlander's Motions to Dismiss as to

the dormant Commerce Clause claim and granted the motion as to Legacy's Due Process, Equal

Protection, and Privileges and Immunities claims.  [R. 57 at 18.]  On September 30, Legacy filed

a Motion to Amend the First Amended Complaint, which the Court granted on August 24, 2021.

[R. 62; R. 75.]  On September 7, 2021, Secretary Friedlander filed two motions to dismiss all the

claims in this case.  [R. 78; R. 79.]  On May 3, 2022, the Court granted Secretary Friedlander's

motions to dismiss as to the Due Process, Equal Protection, and Privileges or Immunities claims

and denied the motion as to the dormant Commerce Clause claim.  [R. 94 at 15.]  On May 20,

following the close of discovery, Secretary Friedlander filed a motion for summary judgment

arguing that Legacy lacked standing.  [R. 98.]

On July 15, the parties filed cross-motions for summary judgment on the dormant

Commerce Clause claim, which is the only remaining claim.  [R. 105; R. 107.]  Secretary

Friedlander argues that Kentucky's CON program does not impose a burden on the national

ground ambulance market and that the putative local benefits of Kentucky's CON program "are

well documented and not merely speculative."  [R. 105-1.]  Legacy argues that (1) the burdens

imposed on interstate commerce "outweigh any putative local benefits;" and (2) Kentucky's

---

[2] Intervenor Defendant Patient Transport Services, Inc. has since been renamed First Care Ohio, LLC.

Certificate requirement is *per se* unconstitutional to the extent it applies to wholly interstate transport.  [R. 107.]

The parties requested oral argument on their dormant Commerce Clause summary judgment motions.  [R. 105 at 2; 107 at 1.]  However, the Court finds that the parties' briefing is sufficient to address the summary judgment motions and that oral argument is unnecessary.  *See, e.g.*, *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 339 (6th Cir. 2007) (finding "dispositive motions are routinely decided on papers filed by the parties, without oral arguments, just as this court often hears and determines appeals without oral argument") (citing *Commodities Export Co. v. United States Customs Serv.*, 888 F.2d 431, 439 (6th Cir. 1989)); *Schentur v. United States*, 1993 WL 330640, at *5 (6th Cir. 1993) (finding "this court has stated that district courts may dispense with oral argument on motions for 'any number of sound judicial reasons'") (quoting *Yamaha Corp. of America v. Stonecipher's Baldwin Pianos & Organs*, 975 F.2d 300, 301, n. 1 (6th Cir.1992); *Carter v. Porter*, 2012 WL 298479, at *3 (E.D. Ky. Feb. 1, 2012) (noting that while Local Rule 7.1 permits parties to request oral argument, the decision to grant that request is within the court's discretion).

## II

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986).  "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'"  *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

4

The moving party bears the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court then must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co*., 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251–52). In making this determination, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

## A

Secretary Friedlander's first motion for summary judgment challenges Legacy's Article III standing, which is a challenge to subject matter jurisdiction. *See Accord v. Anderson Cnty., Tenn.*, 2021 WL 6135691, at *2 (M.D. Tenn. Dec. 28, 2021) (citing *Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019)). "Standing is a threshold question in every federal case." *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Article III's "irreducible constitutional minimum" of standing has three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must: (1) have suffered "an 'injury-in-fact' – an invasion of a legally

protected interest which is (a) concrete and particularized, and (b) actual an imminent, not conjectural and hypothetical;" (2) show that the injury is "fairly traceable to the challenged action of the defendant;" and (3) show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010) (quoting *Lujan*, 504 U.S. at 560–61). "The party invoking federal jurisdiction bears the burden of establishing these three elements." *Lujan*, 504 U.S. at 561.

Secretary Friedlander argues that Legacy lacks standing because Legacy cannot satisfy the redressability prong. [R. 98 at 11.] Secretary Friedlander specifically argues that Legacy "would not be able to operate in Kentucky because they would not meet the remaining CON criteria or Kentucky's ambulance licensure regulations that they are not challenging in this lawsuit." *Id.* Secretary Friedlander points to 202 KAR § 7:555, Section 2 to argue that Legacy is not in compliance with Kentucky's licensure requirements and is not currently capable of doing so. *Id.* Secretary Friedlander also points to deposition testimony of Legacy's administrator Hannah Howe in which Ms. Howe admitted that Legacy is not currently meeting certain requirements for licensure in Kentucky. *Id.* at 6–7.]

In response, Legacy argues that Secretary Friedlander mischaracterized the testimony of Ms. Howe to argue that Legacy could not comply with Kentucky's ambulance licensure regulations. [R. 103 at 6.] Legacy points to Ms. Howe's deposition testimony in which she stated that if Legacy "were able to secure permission to operate in Kentucky" Legacy would "abide by all relevant Kentucky laws and regulations." [R. 98-3 at 140.] Furthermore, Legacy argues that even if they are not currently satisfying all of Kentucky's ambulance licensure regulations, courts across the country have held that "plaintiffs may use litigation to tackle just one obstacle they face, even though future obstacles may remain as to their ultimate goal." [R.

6

103 at 7 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260-64

(1977); *Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 285 (4th Cir. 2018);

*Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 993 (9th Cir. 2012); *Idaho Bldg. & Constr.*

*Trades Council, AFL-CIO v. Wasden*, 32 F. Supp. 3d 1143, 1153 (D. Idaho 2014); *cf. Larson v.*

*Valente*, 456 U.S. 228, 243 (1982); *Maxwell's Pic-Pac, Inc. v. Dehner*, 887 F. Supp. 2d 733, 742

(W.D. Ky. 2012); *Bruner v. Zawacki*, 997 F. Supp. 2d 691, 697 (E.D. Ky. 2014)).]  Finally,

Legacy argues that the Court already addressed the standing issue and found that Legacy had

standing to bring this lawsuit.  *Id.* at 2, 7.

After review, the Court finds that Legacy has standing to bring this suit for several

reasons.  First, the Court already found that Legacy had standing as to the dormant Commerce

Clause claim, and while standing is an ongoing inquiry, Secretary Friedlander has failed to point

to any new evidence that the Court's prior finding was in error.  [R. 57 at 7–8.]  In addition, as to

the redressability prong specifically, the Court previously held that a favorable decision to

Legacy in this case would redress the injury because, if the Court granted the relief requested,

Legacy could reapply for a Certificate of Need without being subject to the protest procedure and

need requirement.  *Id.*; *see also Freeman v. Corznine*, 629 F.3d 146, 156 (3d Cir. 2010) (finding

standing satisfied in dormant Commerce Clause context because the regulation at issue directly

affected the Plaintiffs' ability to participate in commerce).

This entire case is about Legacy's desire to operate ground ambulance services in

Kentucky.  It therefore strains credulity that Legacy would not intend to meet Kentucky's other

CON requirements if given the opportunity.  And contrary to Secretary Friedlander's claim,

Legacy has stated that it would comply with all applicable licensure requirements to operate in

Kentucky.  [R. 103-1 at 139.]

A favorable decision in this case would remove multiple barriers to Legacy's entry into the ground ambulance market in Kentucky, and it is well established the redressability prong can be satisfied without removing all barriers to entry.  *See Vill. of Arlington Heights*, 429 U.S. at 261–62 (finding that removal of one barrier sufficient to establish standing); *Sierra Club*, 899 F.3d at 285 ("The removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability."); *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 96 (2d Cir. 2017) (finding redressability prong satisfied even if ultimate outcome plaintiffs seeking did not occur because outcome was substantially likely); *Antilles Cement Corp. v. Fortuno* , 670 F.3d 310, 318 (1st Cir. 2012) ("To carry its burden of redressability, [plaintiff] need only show that a favorable ruling could potentially lessen its injury; it need not definitely demonstrate that a victory would completely remedy the harm."); *Bruner*, 997 F. Supp. 2d at 697 ("A favorable decision by this Court would redress the injury, not because the Plaintiffs would automatically be granted a Certificate, but because the unconstitutional obstacle would be removed from their path to operate a moving company in the Commonwealth.").  Therefore, the Court finds that Legacy has standing and will proceed to the dormant Commerce Clause claim.

## B

The Sixth Circuit has described dormant Commerce Clause analysis as a two-step inquiry.  "The first inquiry requires a court to determine whether 'a state statute directly regulates or discriminates against interstate commerce, or [whether] its effect is to favor in-state economic interests over out-of-state interests.'"  *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 644 (6th Cir. 2010) (quoting *Brown–Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986)); *see also Garber v. Menendez*, 888 F.3d 839, 843 (6th Cir. 2018) (finding "laws that discriminate explicitly against interstate commerce" or "have an impermissibly protectionist

purpose or effect" will almost always be found to be invalid).  However, if a law or regulation regulates evenhandedly and only has "indirect effects on interstate commerce," courts move on to the second inquiry, "which requires the application of the balancing test set forth in *Pike v. Bruce Church, Inc.*"  *Id.* (citing 397 U.S. 137 (1970)).

Under *Pike*, a "statute is valid unless the burdens on interstate commerce are 'clearly excessive in relation to the putative local benefits.'"  *E. Ky. Res. v. Fiscal Court of Magoffin Cnty.*, 127 F.3d 532, 540 (6th Cir. 1997) (quoting *Pike*, 397 U.S. at 142).  "The party challenging the statute bears the burden of proving that the burdens placed on interstate commerce outweigh the benefits."  *Id.* at 545.  The putative benefits of a challenged law are evaluated under the rational basis test.  *Boggs*, 622 F.3d at 650 (finding rule constitutional under *Pike* because "there is a rational basis to believe that the Rule's benefit outweighs any burden that it imposes"); *see also Colon Health Ctrs. of Am., LLC v. Hazel*, 813 F.3d 145, 156 (4th Cir. 2016) ("In identifying the 'putative local benefits' to be weighed against incidental burdens on interstate commerce, we therefore apply a rational basis standard of review.") (citation omitted).

*Pike* balancing is "a difficult exercise, often requiring courts to make subjective judgments not unlike 'deciding whether three apples are better than six tangerines.'"  *Garber*, 888 F.3d at 845 (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 360 (2008) (Scalia, J., concurring)); *see also CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 95 (1987) (Scalia, J., Concurring) ("[The *Pike*] inquiry is ill suited to the judicial function and should be undertaken rarely if at all."); *Hazel*, 813 F.3d at 155 (finding *Pike* "is often too soggy to properly cabin the judicial inquiry or effectively prevent the district court from assuming a super-legislative role").  The *Pike* standard is permissive, and the Sixth Circuit "has not invalidated a law under *Pike* balancing in three decades."  *Garber*, 888 F.3d at 845.

Here, Kentucky's CON law does not discriminate against interstate commerce explicitly or have an impermissible protectionist purpose or effect.  [*See, e.g.*, R. 57 at 9 (citing [R. 17 at ¶¶ 59–68]); R. 105-1 at 11 ("it is undisputed that Kentucky's CON law does not discriminate against interstate commerce in purpose or effect"); R. 107 at 8 ("Because the program regulates interstate and intrastate commerce evenhandedly, it is subject to the *Pike* balancing test").]  Businesses desiring to provide ground ambulance services in Kentucky must secure a Certificate of Need whether they are a Kentucky business or an out-of-state business.  *See Garber*, 888 F.3d at 843 (finding Ohio law that "draws no distinctions based on residency" does not constitute explicit discrimination).  Because the protest procedure and need requirement at issue in this case treat "similarly situated in-state and out-of-state entities the same," the Court will evaluate the parties' claims under the *Pike* test.  *Id.*

**1**

Secretary Friedlander first argues that Legacy has failed to demonstrate Kentucky's CON law burdens interstate commerce.  [R. 105-1 at 14.]  The Sixth Circuit has instructed that the *Pike* inquiry should focus on whether a regulation burdens the national market, and Secretary Friedlander argues that Legacy has failed to establish that Kentucky's CON law has burdened the national ambulance market.  *Id.* (citing *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 451 (6th Cir. 2009)).  This is particularly true given that other out-of-state ambulance providers, such as Intervenor Defendant First Care Ohio, LLC, "have gone through the CON and licensure process to operate in Kentucky."  *Id.*

Next, Secretary Friedlander argues that the primary putative local benefit to Kentucky's CON law as it currently stands is that "it helps ensure access to 911-response ambulance services for Kentucky residents, particularly residents of rural counties such as the ones at issue here."

[R. 105-1 at 15.]  In addition, Secretary Friedlander argues that the law "protects local taxpayers" by preventing ambulance providers from "scoop[ing] up the profitable ambulance transports while leaving the unprofitable 911-response transports to the taxpayer-subsidized agencies." *Id.*

Secretary Friedlander notes that ambulance services are different from other industries because they "have no control over how much of the payment they receive for their services." *Id.*  Secretary Friedlander notes that 55% of ground ambulance transports performed are for Medicare beneficiaries, 15% are for Medicaid beneficiaries, 25% are reimbursed by third-party payors like Anthem or Humana, and 5% are performed by private pay individuals without insurance.  *Id.* at 15–16.  Medicare and Medicaid set their own non-negotiable reimbursement rates, "most ambulance companies have no real negotiating power with these third-party payors," and ambulance companies can generally only collect about "1–2% of their gross charges form private-pay transports."  *Id.*

Given these realities, Secretary Friedlander argues that the CON program "incentivizes ambulance provide[r]s that are willing to serve underserved and disadvantaged areas of the Commonwealth" because "ambulance providers often cross-subsidize the losses they sustain by performing 911-response transports with the profits they can sometimes make from non-emergency transports."  *Id.*  The concern is that if an agency like Legacy is allowed to "do the profitable runs while leaving the unprofitable runs to the existing agencies," Kentuckians will suffer.  *Id.* at 20.  Therefore, Secretary Friedlander argues, the General Assembly "acted entirely rationally in requiring ambulance companies to show a need for their services in the CON program."  *Id.* at 17.

Conversely, Legacy argues that the protest procedure and need requirement of the CON program burden interstate commerce by driving up the cost (or excluding entirely) out-of-state

businesses and burdening interstate travel.  [R. 107 at 8.]  Legacy points to the burdens of the protest procedure, arguing that it "drive[s] up the time, effort, and cost of securing a license" and acts "as a competitor's veto over market entry."  *Id.* at 11.  Legacy argues that from January 1, 2009, through January 1, 2022, only two ground ambulance provider applicants were able to surmount a protest, and often protestors only withdraw their protest "after securing a legally binding agreement from the applicant to service a smaller area."  *Id.* at 11–12.  Legacy argues that the protest procedure burdens "interstate commerce in the form of fewer ambulance services to choose from."  *Id.* at 12.

Legacy likewise argues that the need requirement imposes significant costs on applicants and drives "down the number of businesses who provide trips between Kentucky and other states."  *Id.* at 14.  Furthermore, Legacy argues, Secretary Friedlander lacks evidence that the protest procedure or need requirement improve access to ambulance services, lower costs, or improve quality.  *Id.* at 16–21.  Legacy also argues that "excluding 'unnecessary' providers does not constitute a putative local benefit," and that Secretary Friedlander's experts failed to demonstrate any putative local benefit to Kentucky's CON law.  *Id.* at 21.

While the Court declines to wade into a theoretical economic debate about the wisdom of CON laws generally, the Court finds that Legacy has not demonstrated that the need requirement and protest procedure of Kentucky's CON law, as applied to ground ambulance services, is invalid under *Pike*.  *See CTS Corp.*, 481 U.S. at 92 (finding "[t]he Constitution does not require the States to subscribe to any particular economic theory," and courts should not "second-guess the empirical judgments of lawmakers concerning the utility of legislation").

First, although Legacy is an Ohio business seeking to operate its ground ambulance service in Kentucky, Legacy has failed to identify burdens on interstate commerce because of

Kentucky's protest procedure and need requirement.  After all, these procedures, and the CON requirements generally, apply to Kentucky and out-of-state businesses equally.[3]  Legacy has pointed to no evidence that out-of-state applicants are more often protested than in-state applicants, that out-of-state applicants fail to satisfy the need requirement more often than in-state applicants, or that the CON process in general is more burdensome to out-of-state applicants than in-state applicants.  The mere fact that Legacy's CON application was protested and Legacy was unable to satisfy the need requirement does not automatically mean that Kentucky's CON requirement violates the dormant Commerce Clause.

To the extent Legacy argues it has been specifically harmed by the CON law's protest procedure and need requirement, that is not a problem that can be ameliorated under the dormant Commerce Clause.  This is because "[t]he dormant Commerce Clause protects *interstate commerce*, not individual firms or the structure of particular markets."  *Bredesen*, 556 F.3d at 451 (citing *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127 (1978) ("We cannot ... accept appellants' underlying notion that the Commerce Clause protects the particular structure or methods of operation in a retail market.... [T]he Clause protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations.").  Furthermore, Legacy has failed to demonstrate, or even argue, that the protest procedure and need requirement of Kentucky's CON law burdens the national ground ambulance market, which is the relevant inquiry in the dormant Commerce Clause context.  *Id.* at 451 (upholding regulation after finding that "the scrap dealers have not shown that Memphis's regulation burdens the national scrap metal market").

---

[3] Between January 1, 1995, and February 28, 2022, 56% of CON applications were approved from out-of-state businesses seeking to establish ground ambulance services in Kentucky, and 55% of applications filed by in-state businesses were approved.  [R. 105-1 at 5–6; R. 109 at 2–3.]

However, even if Legacy had demonstrated that Kentucky's protest procedure and need requirement burdened interstate commerce, this burden would not clearly exceed the putative local benefits.  Secretary Friedlander advances several legitimate interests in support of Kentucky's CON program.  Primarily, the CON law "helps ensure access to 911-response ambulance services for Kentucky residents, particularly residents of rural counties."  [R. 105-1 at 15.]  As discussed *supra*, the ground ambulance market is unique, given the need to couple revenue from non-emergency transports with 911-response services and tax subsidies to perform effectively.  If outside companies are permitted to perform non-emergency transports without having to shoulder the burden of 911-response transports, this could lead to either a reduction in 911-response transports or the need for additional tax revenue to support emergency medical services.  [R. 105-1 at 17.]  As stated by Secretary Friedlander's expert Daniel J. Sullivan, a health planning expert with decades of experience with Kentucky's CON law and CON laws across the country:

> expanding the number of ambulance providers does not necessarily result in better outcomes or shorter response times. Many rural areas have an insufficient population to support multiple providers. As competition for a small pool of patients increases, the financial viability of providers is challenged. The result can be reductions in service levels, i.e., number of ambulances serving a county, or the closure of local ambulance services.

[R. 105-3 at 15.]  Secretary Friedlander's expert Guillermo Fuentes, the former Deputy Chief of Montreal EMS and has consulted for EMS systems across the United States and internationally for decades, determined that if Legacy performed non-emergency services in just two of the countries they are requesting, "annually LEGACY would remove between $107,290 or $357,633 of revenue annually, should both Bracken and Fleming be unable to adjust staffing for 911

14

readiness, they would require additional annual tax payor funding between $163,313 to $413,656 or reduce service levels." [4]  [R. 105-4 at 33.]

Legacy's arguments to the contrary are unavailing.  Legacy relies on the expert report of Dr. Matthew Mitchell, who argues that CON laws fail to improve access to ambulance services, lower costs, or improve quality.  [R. 107 at 16–20.]  However, Dr. Mitchell does not have expertise or knowledge about many of the core aspects of this case.  Secretary Friedlander's experts both had decades of experience consulting on CON issues in the ground ambulance arena specifically and relied on Kentucky-specific data.  Dr. Mitchell, on the other hand, admitted that he lacked knowledge about ground ambulance finances and services, had not reviewed ground ambulance services data in Kentucky, has never reviewed the financials of any Kentucky ground ambulance services, and was unfamiliar with how Medicare, Medicaid and commercial insurance reimbursement rates worked.  [R. 105-1 at 17–18 (citing R. 105-7 at 30–31, 33, 36, 47).]  His thesis was essentially that CON regimes generally fail to improve access and quality of care except in highly technical fields.  [R. 107 at 7.]

Dr. Mitchell only reviewed one white paper that addressed ground ambulance services in Kentucky, and he admitted that he would not be comfortable submitting that article for peer review without substantive changes.  [*Id.* at 18 (citing R. 105-7 at 124–125).]  The white paper indicated that "Kentuckians had access to 24% fewer ambulances than the average of the comparator states and faced longer wait times."  [R. 107 at 17.]  The paper also pointed to a

---

[4] Legacy argues that it would likely operate in Mason County more often than Bracken and Fleming, and the expert report did not adequately take this into account when projecting the impact on state tax subsidies.  [R. 115 at 8.] Furthermore, Legacy argues that the report does not account for the fact that Legacy might make trips that no other providers in the area are currently making.  *Id.* at 9.  While the Court agrees with Legacy that the impact in Bracken and Fleming counties may not be quite as severe as the report states, Legacy has failed to demonstrate that there would be no impact.  Ultimately, however, even if the tax increase issue is completely removed from consideration, the Court finds that Secretary Friedlander has proffered other local benefits that sufficiently satisfy the *Pike* standard.

survey in which 41% of Kentucky mayors said their city needed more ambulances or EMS services. *Id.* However, the author of the paper admitted that he was not an expert in healthcare and did not consider himself to be an expert on the issue of certificates of need. [R. 108-1 at 26–27.] In addition, the author admitted that his comparator data was incomplete, and he only looked at ambulance response times in one of Kentucky's 120 counties in assessing the Commonwealth's wait times. [R. 108-1 at 76–77.] Furthermore, the mayor survey only interviewed twenty unidentified mayors. *Id.* at 172–73. This paper does not provide the kind of support necessary to overturn a law under *Pike*.[5]

Legacy also points to *Walgreen Co. v. Rullan*, 405 F.3d 50 (1st Cir. 2005), and *Medigen of Kentucky, Inc. v. Public Serv. Comm'n of W. Virginia*, 985 F.2d 164, 167 (4th Cir. 1993) as demonstrating that Kentucky's CON law is unconstitutional under the dormant Commerce Clause.[6] However, the Court finds that these cases are inapposite. In *Walgreen*, the First Circuit invalidated a requirement that all businesses wishing to operate a pharmacy in Puerto Rico must first obtain a certificate of need. *Rullan*, 405 F.3d at 55. However, the certificate of need requirement exempted upon passage all existing pharmacies, of which 92% were locally owned. *Id.* These existing pharmacies were "permitted to wield substantial influence in the enforcement of the certificate requirement against proposed new pharmacies" and out-of-Commonwealth pharmacies were opposed significantly more often than local pharmacies. *Id.* The same is not true here.

---

[5] Legacy has argued that there is an ambulance shortage in Kentucky. [*See, e.g.*, R. 107 at 12.] Secretary Friedlander's expert Mr. Sullivan did acknowledge that "in certain parts of Kentucky there are problems with ambulance response times." [R. 107-4 at 65.] However, Legacy does not identify where in Kentucky the ambulance shortage is most acute, address whether each of the counties in which Legacy desires to operate has an ambulance shortage, or provide any factual support for the proposition that removal of the need requirement and protest procedure but leaving the rest of Kentucky's CON law intact would properly alleviate the shortage.
[6] Legacy also cites approvingly to *Bruner v. Zawacki*, 997 F. Supp. 2d 691 (E.D. Ky. 2014). While the court in *Bruner* did invalidate a CON law for moving companies specifically, the case was decided on Due Process and Equal Protection grounds and did not implicate the dormant Commerce Clause.

As noted *supra*, between January 1, 1995, and February 28, 2022, 56% of CON applications were approved from out-of-state businesses seeking to establish ground ambulance services in Kentucky, and 55% of applications filed by in-state businesses were approved.  [R. 105-1 at 5–6; R. 109 at 2–3.]  Contrast this with *Walgreen* in which ninety percent of local applicants "forced to endure the hearing process" were granted certificates compared to only fifty-eight percent of out-of-Commonwealth applicants.  405 F.3d at 56.  Furthermore, ground ambulance services are different from pharmacies.  Although "[p]harmacies seek to operate in areas where they can turn a profit," *id.* at 60, ground ambulance services must balance providing profitable services with emergency services that are "often the most expensive to perform and result in the lowest reimbursement."  [R. 105-1 at 8.]

*Medigen* is also distinguishable.  In 1989 Medigen began hauling infectious medical waste out of West Virginia without the required certificate.  985 F.2d at 165.  The Commission only granted certificates to "prospective transporters of infectious medical waste [if] current service is inadequate."  *Id.* at 166.  One of Medigen's competitors complained, and Medigen was threatened with criminal prosecution if it continued to operate in West Virginia without a certificate.  *Id.* at 165.  Medigen filed suit, and the district court found that West Virginia's certification requirement was a direct regulation of interstate commerce, and the Fourth Circuit affirmed after applying the *Pike* test.  *Id.* at 168.

As with *Walgreen*, the Court finds the particular facts and circumstances of *Medigen* distinguishable from this case.  Once again, hauling medical waste is different from providing medical services, particularly given that ground ambulance services must balance providing profitable services with emergency services.  A more appropriate comparison with this case is *Colon Health Centers of America v. Hazel*, 813 F.3d 145 (4th Cir. 2016).

In *Colon Health*, the Fourth Circuit analyzed Virginia's certificate of need requirement for medical service providers.  813 F.3d at 160.  Virginia's certificate of need program required that "an applicant show a sufficient public need for its proposed venture in the relevant geographic area."  *Id.* at 149.  Virginia asserted that the certificate of need was necessary to help "prevent the redundant accretion of medical facilities, protect the economic viability of existing providers, promote indigent care, and assist cost-effective health care spending."  *Id.*  After applying *Pike* balancing, the Fourth Circuit found Virginia's CON program did not violate the dormant Commerce Clause and affirmed the district courts' grant of summary judgment to Virginia.

Here, like *Colon Health*, Secretary Friedlander has proffered legitimate reasons for Kentucky's CON program, and for the protest procedure and need requirement specifically. Secretary Friedlander is concerned that if a business like Legacy is permitted to "do the profitable runs while leaving the unprofitable runs to the existing agencies" without satisfying the need requirement, Kentuckians will suffer.  [R. 105-1 at 20.]  *Colon Health* addressed this concern in the full-service hospital context:

> Appellants' expert agreed in his deposition that full-service hospitals have "long been in the practice of cross-subsidizing unprofitable services with the profits from those that are profitable." J.A. 392. It is perhaps no accident that the CON applicants in this case sought to open standalone gastroenterology and radiology facilities, not new community health centers. Concerns that such practices could drain needed revenue from more comprehensive general hospitals providing necessary though unprofitable services are not irrational.

813 F.3d at 157.  Relatedly, and similar to the facts presented in *Colon Health*, Kentucky's CON law aims to incentivize ambulance providers to serve underserved and disadvantaged areas of the Commonwealth by providing both emergency and non-emergency services.  *Id.*  As for the

18

protest procedure, Legacy has failed to demonstrate that the procedure unfairly burdens interstate commerce given that it applies equally to in-state and out-of-state businesses.

Although Legacy may disagree with the policy choices the Kentucky General Assembly made, Legacy has not demonstrated that Kentucky's CON law violates the dormant Commerce Clause. Although Kentucky could consider other alternatives to Kentucky's CON program, such as raising Medicaid rates or requiring non-emergency ambulance businesses to also handle a percentage of emergency transports [R. 110 at 13–14], this does not mean that the Kentucky General Assembly acted irrationally. "Because there is a rational basis to believe that the [law's] benefit outweighs any burden that it imposes, the [law] is constitutional under *Pike*." *Boggs*, 622 F.3d at 650.

### 3

Legacy also argues that Kentucky's CON requirement is *per se* unconstitutional as applied to "interstate trips between Kentucky and other states." *Id.* at 23 (citing *Buck v. Kuykendall*, 267 U.S. 307 (1925)). This is true, Legacy argues, because these trips "constitute a direct regulation of interstate commerce" and have the effect of favoring "local health facilities at the expense of out-of-state health facilities." *Id.* The Court is unpersuaded by Legacy's argument.

In *Buck v. Kuykendall*, Mr. Buck was a common carrier who was seeking to become a transporter for hire between Seattle, Washington, and Portland, Oregon. 267 U.S. at 313. Mr. Buck obtained the "license prescribed by its laws" from Oregon, but Washington refused to grant him the necessary "certificate of public convenience and necessity." *Id.* Mr. Buck appealed, and the Supreme Court ultimately found that Washington's certificate of public need and necessity,

which was used to determine "the persons by whom the highways may be used," was improper. *Id.* at 316.

Here, Kentucky is not preventing ground ambulance services from operating in Kentucky at all without a CON.  In fact, out-of-state ground ambulance agencies without a CON are treated more favorably than in-state ground ambulance agencies.  Without a CON, an out-of-state ground ambulance business, may "(1) transport a patient from another state to a location in Kentucky; (2) transport a resident of another state from a location in Kentucky back to the patient's home; and (3) drive through Kentucky when taking a patient from another state to a location in another state."  [R. 105-1 at 5 (citing 202 KAR 7:501, Sec. 6); R. 109 at 2.]  In-state agencies, however, are required to have a CON and Kentucky license to make such trips within Kentucky.

A Certificate of Need is only required to conduct intrastate transports within Kentucky and for interstate transports of Kentucky residents if the transport originates in Kentucky.  *Id.* This type of restriction is not uncommon.  In fact, at least nineteen other states restrict new entrants into ground ambulance services areas, including seven other states that also require a Certificate of Need.[7]  [R. 105-1 at 10; R. 107 at 7.]  The Court finds that *Buck* is distinguishable from this case because Kentucky's CON law was more carefully crafted than the regulation at issue in *Buck* and applies to Kentucky and out-of-state businesses equally.[8]

---

[7] The states that restrict new entrants into ground ambulance services areas include the following: Arizona (A.R.S. 36-2233), Arkansas (007 28 CARR 001), California (Cal Health & Safety Code § 1797.224), Connecticut (Conn. Gen. Stat. § 19a-180), Florida (Fla. Stat. § 401.25), Hawaii (HAR 11-72), Illinois (77 Ill. Adm. Code 515.300), Louisiana (La. R.S. § 33:4791), Massachusetts (105 CMR 170.249), Nevada (Nev. Rev. Stat. Ann. § 474.590), New Mexico (N.M. Stat. Ann. § 65-2A-8), New York (NY CLS Pub Health § 3005), North Carolina (N.C. Gen. Statute § 153A-250), Ohio (ORC Ann. 505.44), Oklahoma (O.A.C. § 310:641-3- 10), Oregon (ORS § 682.062), Texas (Tex. Health & Safety Code § 774.003), Utah (Utah Code Ann. § 26-8a-402), and Washington (Rev. Code Wash. (ARCW) § 18.73.130).  [R. 105-3 at 16.]

[8] To the extent Legacy also argues in one paragraph that the CON requirements are "*per se* unconstitutional because they have the effect of discriminating against out-of-state facilities," the Court finds that Legacy failed to support this argument with any factual or legal support.  "The Court is not obligated to develop the Plaintiffs' half-hearted arguments."  *Norton v. Beasley*, 564 F. Supp. 3d 547, 581 n.19 (E.D. Ky. 2021) (citing *McPherson v. Kelsey*, 125

To the extent Legacy relies on *Buck* for the proposition that Kentucky's CON law constitutes a "direct regulation of interstate commerce," that doctrine "appears to have been repudiated." *Bredesen*, 556 F.3d at 449 (quoting *CSX v. City of Plymouth*, 283 F.3d 812, 818 (6th Cir. 2002)). And under *Pike*, for the reasons discussed *supra*, Legacy has not demonstrated that any alleged burdens on interstate commerce are clearly excessive in relation to the putative local benefits. In attempting to examine the potential burdens on interstate commerce, Legacy has failed to provide even the most basic information such as: (1) how many ambulance transports of Kentucky residents from a location in Kentucky to another state occur annually; (2) how many ground ambulances currently perform these kinds of transports; or (3) how Kentucky compares to other states with similar (or different) requirements. For all these reasons, Legacy's argument fails.

## III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Secretary Friedlander's Motion for Summary Judgment on the issue of subject-matter jurisdiction **[R. 98]** is **DENIED**;

2. Secretary Friedlander's Joint Motion for Summary Judgment on the dormant Commerce Clause issue **[R. 105]** is **GRANTED**;

3. Legacy's Motion for Summary Judgment **[R. 107]** is **DENIED**; and

4. Judgment shall be entered contemporaneously herewith.

---

F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.")).

This the 8th day of September, 2022.

Gregory F. Van Tatenhove
United States District Judge